UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard E. TAYLOR,
Defendant-Appellant.

Nos. 78–2512, 79–1240.

United States Court of Appeals,
Ninth Circuit.

Argued May 1, 1979.

Submitted Jan. 15, 1980.

Decided March 20, 1981.

Rehearing and Rehearing En Banc
Denied June 17, 1981.

Peter Shenas, Shenas, Robbins, Shenas & Shaw, San Diego, Cal., for defendant-appellant.

Bruce J. Kelton, Sp. Atty., U. S. Dept. of Justice, Los Angeles, Cal., for plaintiff-appellee.

Before ELY and WALLACE, Circuit Judges, and TAKASUGI,* District Judge.

ELY, Circuit Judge:

The subject causes have been consolidated on appeal. Because the cases involve a single defendant and arise from the same criminal proceeding, the facts of each cause are discussed together. The legal issues, however, are distinct and require separate resolution.

## FACTS

Richard E. Taylor appeals from his conviction of wire fraud in violation of 18 U.S.C. § 1343 (1976) (No. 78–2512) and an order of the District Court denying his mo-

tion for a writ of error *coram nobis* (No. 79–1240).

Taylor and Dennis B. Wittman were jointly indicted for their part in the assertedly fraudulent acquisition of a substantial loan from the Continental Bank of Texas ("Continental"), in Houston, Texas. During the period of time covered by the indictment, late 1974 to early 1975, Taylor was a vice-president of the real estate department of Home Federal Savings and Loan Association ("Home Federal"), located in San Diego, California. The fraudulent "scheme or artifice" alleged by the Government was that Taylor and Wittman, who was a principal in several San Diego real estate development entities, had induced Continental to make a $1.97 million loan to a corporation run by Wittman, on the basis of their false representations of several material facts. In a January 16, 1975 letter signed by Taylor and containing an initialed postscript, Taylor and Wittman blatantly misrepresented to Continental that Home Federal held a first lien on certain California real property. This letter was telecopied from San Diego to Houston, where Wittman received it, photocopied it, and delivered the photocopy to a loan officer of Continental. The photocopy tendered to Continental, which was the copy of the letter Continental relied on in approving the loan, was admitted into evidence at Taylor's trial as Government Exhibit "24." On January 23, 1975, Taylor signed a letter agreement with Continental purporting to confirm Home Federal's first lien commitment.[1] After Taylor signed the letter agreement, without authorization, in his capacity as an officer of Home Federal, Continental funded the $1.97 million loan.

In July 1975, Wittman's corporation defaulted on the loan. Taylor and Wittman were indicted in June 1977; the Government's motion for severance was granted on January 16, 1978. Taylor's trial commenced on March 14, 1978.

---

* Honorable Robert M. Takasugi, United States District Judge, Central District of California, sitting by designation.

1. This letter agreement was admitted as Government Exhibit "25."

An issue at trial critical to the jurisdictional element of the crime charged[2] was whether Taylor had already signed the fraudulent letter dated January 16, 1975 (the predecessor of Exhibit "24") when it was telecopied from California to Texas, or whether Taylor had signed it after its transmission to Texas. Neither the "original" nor the telecopy was ever produced at trial. Instead, the Government introduced Exhibit "24," which was either a photocopy of the telecopy or a more remote reproduction.[3] While Exhibit "24" did reflect Taylor's signature, it was never conclusively established that the exhibit was a direct copy of the telecopy, leaving open the possibility that the signature was not affixed

prior to interstate communication. Taylor's counsel at trial objected to the admission of this potentially spurious document on the basis of the "best evidence rule." The trial court ultimately admitted Exhibit "24" as secondary evidence, relying on the Government's claim that the original document had been unsuccessfully subpoenaed from the relevant parties, i. e., Continental, Home Federal, and Wittman's corporation.[4]

In the course of the District Court's probe of the prosecuting attorney on the subpoena issue, Taylor's trial counsel made a qualified stipulation to the admission of the exhibit based on the truth of the Government's representations.[5]

2. 18 U.S.C. § 1343 (1976) requires that the "scheme or artifice to defraud" involve the transmission "by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice."

3. An argument can be made that the "original" letter typed in San Diego is not the original, legally operative document for purposes of "best evidence" analysis because the officer of the defrauded Texas bank made the loan in reliance of either the telecopy or a photocopy of the telecopy. Under this view, the latter documents, rather than the "original" typed letter, must be treated as legally operative originals. See United States v. Gerhart, 538 F.2d 807, 810 n.4 (8th Cir. 1976); 5 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 1001(3)[01] to [02] (1978 & Supp.1979). Because we decide the admissibility issue on other grounds, we need not rule on this rationale.

4. Fed.R.Evid. 1004(2) provides, in pertinent part, as follows: "The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if—... (2) ORIGINAL NOT OBTAINABLE. No original can be obtained by any available judicial process or procedure; ...."

5. At trial, the following colloquy between the district judge, defense counsel, and prosecutor took place:
THE COURT: Well, now, here's my ruling. I understand your point. I am going to overrule your objection to the admissibility, and the evidence in the case will have to be whatever it is concerning what [Exhibit "24"] purports to be—ultimately turns out to be.
MR. SHENAS [Defense Counsel]: Is that ruling based on a representation that the original of this letter has been subpoenaed from

[Continental], from [Wittman's corporation], and from Home Federal by the Government?
THE COURT: Yes.
MR. SHENAS: Thank you.
THE COURT: Now, do you want something—and that's a representation you are willing to rely on?
MR. SHENAS: Your Honor, I don't know if that's true or not. If counsel will tell me that's true, I will believe it. He hasn't said that—anything.
MR. KELTON [Prosecuting Attorney]: What?
MR. SHENAS: That the original of that document was subpoenaed by the Government from [Continental], [Wittman's corporation], and Home Federal.
MR. KELTON: When the Grand Jury investigation was—
THE COURT: Now, can't you answer that question directly?
MR. KELTON: When the Grand Jury investigation was initiated—
THE COURT: Can't you answer it "yes" or "no"?
MR. KELTON: Yes.
THE COURT: Is that the answer, "Yes"? All right. Now, this is important when you come down to make a representation of that kind.
MR. KELTON: Judge, I must say for the record that there's no original that could be located. But I am making this statement after subpoenaes, after speaking to the attorneys, after speaking to everybody involved in this transaction, and I really object to Mr. Shenas' implication that somebody has tampered with this evidence.
THE COURT: Just a minute. I am the person who is asking the question, whether [Wittman's corporation] has been subpoenaed, Home Federal has been subpoenaed, and the bank in Texas has been subpoenaed

Exhibit "24" proved to be a vital piece of evidence for the Government. It was used to rebut Taylor's contention that a fraudulent scheme did not exist at the time of the transmission of the January 16, 1975 letter; it was used to corroborate in important respects the testimony of the prosecution's key witness, Continental loan officer Michael Wells; and, most importantly, it provided evidence of an essential element of the charged offense—interstate communication to execute a fraud.[6]

The jury rendered a guilty verdict on March 29, 1978. Taylor was sentenced to a term of one year and a day. On July 12, 1978, Taylor filed a direct appeal from his conviction (No. 78–2512), assigning a variety of trial errors. The most significant allegation of error was that the District Court erred in the admission of Exhibit "24" because, *inter alia*, the copy was improper under the "best evidence rule" of the Federal Rules of Evidence.[7] In his direct appeal Taylor did not impugn the veracity of the Government's statements concerning the inability of the subpoena power to uncover the original document, since resolu-

tion of that matter necessarily involved matters outside the trial record. Taylor made a personal request for proof of the subpoenas. Unfortunately, the Government did not respond with such proof.[8]

On November 15, 1978, Taylor filed a motion in the District Court for a writ of error · *coram nobis* challenging the Government's subpoena representations and requesting a hearing thereon. The District Court denied Taylor's motion without a hearing, due, in part, to the pendency of the direct appeal before this Court. Taylor filed an appeal (No. 79–1240) from the order of summary denial on March 12, 1979. Later, on May 3, 1979, following oral argument in the direct appeal, the two causes—direct and collateral—were consolidated. On January 15, 1980, both were submitted for decision.

### DISCUSSION

#### I.  *No. 78–2512*

Taylor raises several claims of error in his direct appeal, the most serious of which is that the District Court erred in admitting ·

for the production of the original letter of January 16, 1975—which was Telexed to Texas.

MR. KELTON: Yes, they have, and I would also say this, your Honor: There is no way that the original letter could have been in Texas because it was Telexed. That's the point.

THE COURT: Well, it would then show up with Home Federal, wouldn't it?

MR. KELTON: Home Federal does not have it.

THE COURT: All right. It's been subpoenaed there. That's the only thing I am asking about, and you said it has been. So that's enough. That's what you have said and we needn't have any more explanation.

And on that basis, I will accept this in evidence as secondary evidence.

Now, you know the responsibility you are assuming when you say it's been subpoenaed. Don't look so disheartened.

MR. KELTON: I'm not disheartened, Judge. The only point I am trying to make is that I made a good faith offer of proof to the Court—

THE COURT: I am not suggesting you didn't make it in good faith. I am asking about a foundation for it, for my accepting in evidence secondary evidence.

MR. KELTON: I would just like to put my position on the record, your Honor. It would take one second. That is this: That all I have to do to lay that foundation through this witness is establish a record that that was kept in the ordinary course of business at [Wittman's corporation], and that they do not have the original available. And that is my position under the Federal Rules. And I think I have made that clear.

THE COURT: All right. I will admit the document on the basis of secondary evidence because of your inability through subpoena power to produce the originals.

R.T., Vol. V, at 51–54 (emphasis added). *See also id.* at 43.

**6.** *See* note 2 *supra.*

**7.** *See* Fed.R.Evid. 1002, 1003, 1004.

**8.** We do not pass on whether the Government was obliged to respond to defense counsel's non-judicial request for proof of the subpoenas. Our analysis of the due process and *coram nobis* issues assumes that no duty existed. It bears emphasis, however, that the Government's literal compliance does little to conserve judicial resources, since we have been forced to deal with the subpoena issue in the abstract.

Exhibit "24" into evidence. Having determined that these claims are without merit, we affirm Taylor's conviction.

■■■ Taylor argues that because Exhibit "24" is at best a photocopy of the telecopied January 16, 1975 letter, it was improperly admitted into evidence. Federal Rule of Evidence 1002, Taylor correctly asserts, requires the production of the "original" writing to prove the contents thereof, "except as otherwise provided." Taylor contends that since Exhibit "24" is neither an "original" under Rule 1002 nor a "duplicate" within the exception of Rule 1003,[9] it should not have been admitted into evidence. Taylor's argument overlooks the state of the trial record and the clear application of the exception of Rule 1004(2), which allows the admission of secondary evidence when the "original" cannot be obtained by available judicial procedures.[10] When Exhibit "24" was offered for introduction into evidence at trial, the Government represented to the District Court that subpoenas requesting the "original" letter— i. e., the one typed in San Diego—[11] had been served on the parties and that the "original" was not produced. In reliance on this representation, the District Court admitted Exhibit "24" into evidence. Taylor's counsel did not object to the exhibit's admission.[12] Because Taylor's counsel failed to object to the admission of Exhibit "24,"

and even stipulated to the unavailability of the "original" letter, the record on direct appeal compels that we reject Taylor's "best evidence" argument.[13]

We have carefully considered Taylor's remaining claims and find that the District Court did not abuse its discretion, that the jury was properly instructed, and that the evidence was adequate to support the jury verdict. Therefore, Taylor's conviction of wire fraud in the District Court is affirmed.

## II. No. 79–1240

During the pendency of Taylor's direct appeal, he also filed a *coram nobis* motion with the District Court, the summary denial of which is the subject of the collateral appeal. In ruling on the denial of his collateral motion, we address solely the issue of whether Taylor has demonstrated that he is entitled to a hearing and do not decide whether relief is warranted. For the reasons set forth below, we reverse the District Court and remand for further proceedings.

■■ In the motion for a writ of error *coram nobis*[14] presented to the District Court below, Taylor levels alarming charges against the Government. He contends that the prosecuting attorney misled the trial judge and defense counsel to believe that subpoenas had been issued at trial for the "original" letter, with the result that a less reliable document was admitted. In short,

---

9. Fed.R.Evid. 1003 provides that a "duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

Fed.R.Evid. 1001(4) defines "duplicate" as "a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording, or by chemical reproduction, or by other equivalent techniques which accurately reproduces [*sic*] the original."

10. *See* note 4 *supra*.

11. *Cf.* note 3 *supra* (telecopy or photocopy of telecopy might be legally operative "original").

12. Taylor's argument that the Government factually misrepresented the issuance of subpoenas duces tecum to obtain the original letter is

discussed separately in the *coram nobis* appeal, No. 79–1240.

13. *See* note 5 *supra*. Whether the subpoenas issued were trial subpoenas or grand jury subpoenas would not, in any event, be dispositive. The Advisory Committee Note to Rule 1004(2) contemplates a relatively lax standard of unavailability, surely met on the record here.

14. The common-law writ of error *coram nobis* is available by statute, 28 U.S.C. § 1651(a) (1976) (All Writs Statute), to correct errors of fact of such fundamental character as to render the proceeding itself irregular and invalid. *United States v. Morgan*, 346 U.S. 502, 505–13, 74 S.Ct. 247, 249–53, 98 L.Ed. 248 (1954). Among other circumstances, it is available to vacate a federal conviction where the sentence imposed has not yet been served. *Migdol v. United States*, 298 F.2d 513 (9th Cir. 1961).

Taylor's claim gives rise to the somber prospect that the Government committed a fraud on the court which ultimately worked a great prejudice to Taylor's case.[15]

▮▮▮ While Taylor points to no cases involving facts closely tracking those alleged in his motion, we have no doubt that Taylor's general assertion of principle is grounded in respectable authority, i. e., prosecutorial misconduct may so pollute a criminal prosecution as to require a new trial, especially when the taint in the proceedings seriously prejudices the accused. Courts, therefore, have ordered new trials when the prosecution has knowingly used perjured testimony [16] or withheld materially favorable evidence from the defense;[17] have excluded evidence seized pursuant to unlawful searches;[18] and have dismissed indictments when the defendant was entrapped by the creative concert of police officers in the criminal activities.[19] We see

nothing that limits the due process principle to these situations. When a conviction is secured by methods that offend elementary standards of justice, the defendant may invoke the Fourteenth Amendment guarantee of a fundamentally fair trial. See Irvine v. California, 347 U.S. 128, 144–49, 74 S.Ct. 381, 389–92, 98 L.Ed. 561 (1954) (Frankfurter, J., dissenting). Moreover, this principle is not strictly limited to those situations in which the defendant has suffered arguable prejudice; the principle designed to maintain also public confidence in the administration of justice.[20]

Thus, a claim of prosecutorial impropriety of the type pleaded in the subject motion may be a basis for relief in a coram nobis action.[21] We must determine, therefore, whether the District Court erred in denying Taylor an opportunity to prove his allegations.[22]

---

**15.** Alternatively, Taylor's opening brief in No. 78–2512 and reply briefs in both appeals allege that the Government's subpoenas were issued during the Grand Jury proceedings, and not during trial. In its opening brief in No. 78–2512, the Government does not specify what type of subpoenas were issued. If the issue of timing were the extent of Taylor's claim, we might be inclined to affirm the dismissal of the coram nobis motion, because grand jury subpoenas would have fulfilled the "judicial process or procedure" requirement of Fed.R.Evid. 1004(2). See note 13 supra. We focus instead on Taylor's further assertion that no subpoenas were issued.

**16.** Under the doctrine of Napue v. Illinois, 360 U.S. 264, 269–72, 79 S.Ct. 1173, 1177–78, 3 L.Ed.2d 1217 (1959), a conviction violates the Fourteenth Amendment if it is obtained by the use of perjured testimony which the prosecution knows to be false or later discovers to be false and allows to go uncorrected.

**17.** In United States v. Agurs, 427 U.S. 97, 103–04, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976), the Supreme Court recently reiterated that the demands of due process require the prosecution to turn over materially favorable evidence to the defense. See also United States v. Hibler, 463 F.2d 455, 459–60 (9th Cir. 1972) (prosecution in a criminal trial owes a due process "duty of candor" to defendant).

**18.** See generally United States v. Calandra, 414 U.S. 338, 356–66, 94 S.Ct. 613, 624–28, 38 L.Ed.2d 561 (1974) (Brennan, J., dissenting), and authorities cited therein.

**19.** Hampton v. United States, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); United States v. Hermosillo-Nanez, 545 F.2d 1230, 1232 (9th Cir. 1976), cert. denied, 429 U.S. 1050, 97 S.Ct. 763, 50 L.Ed.2d 767 (1977).

**20.** "This Court has rejected the notion that because a conviction is established on incontestable proof of guilt it may stand, no matter how the proof was secured. Observance of due process has to do not with questions of guilt or innocence but the mode by which guilt is ascertained." Irvine v. California, 347 U.S. at 148, 74 S.Ct. at 391 (Frankfurter, J., dissenting).

**21.** For the purposes of analyzing the issues presented in the appeal, there is no compelling reason to distinguish between coram nobis, § 2255, and habeas corpus case authority; however, cases other than under § 2255 have been earmarked. See also note 25 infra.

**22.** Taylor's claim of Government fraud would, if proven, meet the various tests for relief in the nature of coram nobis. We do not read Moon v. United States, 272 F.2d 530, 532 (D.C.Cir. 1959), or the District Court to suggest otherwise.

The District Court relied on Moon to deny Taylor's motion for a writ of coram nobis, apparently reasoning that the error alleged in the

■ Before determining whether Taylor is entitled to a hearing, however, we note the problem presented by the assertion of a collateral challenge during the pendency of the direct appeal from a conviction. Generally, the noting of such an appeal severely restricts the filing of a collateral claim with the District Court, to avoid any anomaly associated with the simultaneous consideration of the same case by two courts. *See Black v. United States,* 269 F.2d 38, 41 (9th Cir. 1959), *cert. denied,* 361 U.S. 938, 80 S.Ct. 379, 4 L.Ed.2d 357 (1960); *Welsh v. United States,* 404 F.2d 333 (5th Cir. 1968) (per curiam); *Womack v. United States,* 395 F.2d 630, 631 (D.C.Cir.1968) (per curiam). The usual practice is to make a collateral assertion of error subsequent to the date of decision in the direct appeal. When this path is followed the risk of duplicitous and conflicting judicial administration is minimized, inasmuch as the disposition of the direct appeal may render the motion moot. *See Black v. United States,* 269 F.2d at 41.

■ The general rule of forebearance is not, however, a jurisdictional impediment. The District Court may entertain a collateral motion during the pendency of a direct appeal if "extraordinary circumstances" outweigh the considerations of administrative convenience and judicial economy. *See Jack v. United States,* 435 F.2d 317, 318 (9th Cir. 1970) (per curiam), *cert. denied,* 402 U.S. 933, 91 S.Ct. 1530, 28 L.Ed.2d 867 (1971); *United States v. Davis,* 604 F.2d 474, 484–85 (7th Cir. 1979); *United States v. Tindle,* 522 F.2d 689, 692–93 (D.C.Cir. 1975) (per curiam); *Womack v. United States,* 395 F.2d at 631; *United States v. Deutsch,* 321 F.Supp. 1356 (S.D.N.Y.1971), *aff'd,* 451 F.2d 98, 119 n.22 (2d Cir.), *cert. denied,* 404 U.S. 1019, 92 S.Ct. 682, 30 L.Ed.2d 667 (1972). Hence, Taylor's prior appeal from his conviction is not an absolute bar to his concurrent *coram nobis* motion, though it imposes the burden upon him of proving the existence of circumstances sufficiently extraordinary to warrant dual proceedings.

■ Whether that burden has been carried in this case is a close and difficult question. Taylor's *coram nobis* claim directly and seriously implicates this Court's decision in Taylor's direct appeal. We affirmed the conviction largely because of our decision to uphold the admission of Exhibit "24" under the aegis of Federal Rule of Evidence 1004(2). That decision, in turn, was founded on the Government's unsubstantiated, albeit unrebutted, declaration at trial that the subpoena power had failed to produce the original document. Therefore, Taylor's collateral claim—challenging the truth of the Government's representation— raises a disquieting question which threatens the very basis of our affirmance of Taylor's conviction.

When, as in the exceptional facts of this case, the collateral claim casts such a dark shadow on a pivotal aspect of the direct appeal and, at the same time, implicates the fundamental fairness of the trial and propriety of the Government's actions, it is our view that the concerns for justice are best served by prompt inquiry either confirming or dispelling the suspicion of irregularity raised. This is particularly true when, as here, the Government has refused forthrightly to account for or support its critical representations of fact. Accordingly, we hold that the District Court erred in dismissing Taylor's motion solely because the direct appeal was pending before this Court.

■ Passing to the merits of this appeal, we must decide whether the District Court otherwise acted properly in dismissing Taylor's motion for writ of *coram nobis* without the benefit of a hearing. Our task in analyzing his contention is made more difficult by the fact that the District Court, in passing on Taylor's motion, gave only scant elaboration for its summary dismissal.

instant case was, as in *Moon,* apparent on the record. As will be discussed, *infra,* we reject this view, as we also reject the District Court's finding that Taylor did not plead sufficient "exceptional circumstances" to come within the pending appeals exception.

The prosecuting attorney's alleged misrepresentations, which form the basis of Taylor's motion, are included in the trial record.[23] As a consequence, the District Court appears to suggest in the order denying the motion, and the Government clearly argues on appeal, that any error in the trial court's admission of Exhibit "24" was reflected in the trial record and, hence, should have been asserted in the direct appeal. Therefore, the argument proceeds, Taylor is relegated to asserting his argument, if at all, in the direct appeal and not by way of writ of error *coram nobis*. We have little quarrel with the proposition that ordinarily the erroneous admission of evidence at trial is an error which should be challenged by taking an appeal from the judgment of conviction. *See Cauley v. United States*, 294 F.2d 318, 320 (9th Cir. 1961); *Barber v. United States*, 197 F.2d 815 (10th Cir.) (per curiam), *cert. denied*, 344 U.S. 857, 73 S.Ct. 94, 97 L.Ed. 665 (1952). Yet that salutary principle finds no application here, and to invoke it is to misapprehend and obscure Taylor's claim. The *coram nobis* motion does not focus on the propriety of the trial court's reliance on the prosecuting attorney's statements, without more, in the admission of Exhibit "24." That matter was, properly, addressed in the direct appeal. Taylor's collateral motion, rather, strikes at the veracity *vel non* of the Government's representations to the trial court. On that issue, the record is barren. Indeed, it is because the collateral challenge propels us outside the record into the murky realm of speculation that we harbor doubts about the fairness of Taylor's trial.[24]

Thus, in our view, the District Court erred in summarily denying Taylor's claim merely because the challenged statements appear in the trial record.

The Government, in opposition to such a conclusion, insists that Taylor has not carried his burden of raising a question about the falsity of the prosecuting attorney's comments. Since we deal here with the dismissal of a petition for *coram nobis* with no hearing, we must determine, as we do with claims under § 2255,[25] whether the "motions and the files and records of the case conclusively show that the prisoner is entitled to no relief."[26] *See United States v. Boniface*, 601 F.2d 390, 393 (9th Cir. 1979); *Dukes v. United States*, 492 F.2d 1187, 1188 (9th Cir. 1974) (per curiam); *Lopez v. United States*, 439 F.2d 997, 999–1000 (9th Cir. 1971). This inquiry necessitates a twofold analysis: (1) whether the petitioner's allegations specifically delineate the factual basis of his claim, *Diamond v. United States*, 432 F.2d 35, 37 (9th Cir. 1970); *Wagner v. United States*, 418 F.2d 618, 621 (9th Cir. 1969); and, (2) even where the allegations are specific, whether the records, files and affidavits are conclusive against the petitioner. *United States v. Moore*, 599 F.2d 310, 312 (9th Cir. 1979), *cert. denied*, 444 U.S. 1024, 100 S.Ct. 687, 62 L.Ed.2d 658 (1980). Since the subpoena issue does not appear on the record, but is an extrinsic matter, the principal legal question is whether Taylor has endowed his petition with sufficient factual particulars to require a hearing.

---

**23.** *See* note 5 *supra*.

**24.** Analogous situations involving matters which, if proven, would amount to a denial of a fair trial and which cannot be raised on direct appeal because they are outside the scope of the trial, are cognizable upon collateral motion. *See* the cases collected in *Houser v. United States*, 508 F.2d 509, 517–18 (8th Cir. 1974), including circumstances of coerced confessions, suppression of helpful evidence by the prosecutor, the Government's knowing use of false testimony, and the falsification of a transcript by a prosecutor.

**25.** Whether a hearing is required on a *coram nobis* motion should be resolved in the same manner as habeas corpus petitions. *Owensby*

*v. United States*, 353 F.2d 412, 417 (10th Cir. 1965), *cert. denied*, 383 U.S. 962, 86 S.Ct. 1234, 16 L.Ed.2d 305 (1966).

**26.** 28 U.S.C. § 2255 (1976) provides, in pertinent part:

Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

In support of his assertion that the Government misled the trial court and defense counsel, Taylor points first to the record to demonstrate that the Government's statements were not substantiated. To overcome the presumption of verity borne by the prosecuting attorney's statements, Taylor relies largely on the affidavit of Stephen D. Guy, defense counsel at trial. Guy states in his affidavit that he was informed by Donald Seifers, the agent responsible for the Government's subpoenas in this case, that, at best, some grand jury subpoenas may have been issued, but that Seifers was certain that the original letter had not been subpoenaed for the purpose of trial from at least two of the appropriate parties, i. e., Continental Bank and Home Federal.

Viewed against the record, Taylor's claim does not lack for clarity, focusing as it does on the subpoena issue. Moreover, his charge is fortified by an affidavit which sets forth clear factual averments giving rise to a serious question as to the subpoenas. *Compare Wagner v. United States*, 418 F.2d at 621 (§ 2255 movant need not "detail his evidence," only make "factual allegations"), *with Wacht v. Cardwell*, 604 F.2d 1245 (9th Cir. 1979) (mere allegation that the state trial judge failed to inform the defendant about his parole ineligibility was too general to require a § 2254 hearing), *and Eaton v. United States*, 384 F.2d 235 (9th Cir. 1967) (in a motion to vacate sentence based on defense counsel's failure to call a material witness, the allegations were insufficient to sustain an inference that the testimony would have been favorable to appellant). Likewise, the consequences of the claim presented, if true, are manifest, since Exhibit "24" bore heavily on a pivotal issue at trial, i. e., Taylor's usage of interstate communication to perpetrate a fraud.[27] In short, Taylor's claim is clear, detailed, plausible, and unrebutted by the record.

Further, this case presents an unusual situation because the Government has made no effort specifically to deny Taylor's charges—much less to produce the subpoenas in question. Despite the uncertainty surrounding its trial declarations, the Government has consistently resisted accountability by interposing technical arguments, some of which have been referred to above. The Government's response plainly does nothing to controvert the substance of appellant's claim. To the contrary, it serves to reinforce the lingering doubts in this case since proof of the subpoenas, if it exists, is presumably in the hands of the Government. Taylor's inquiry, rather than being opposed, should have been welcomed by the Government as a means of building greater public confidence in our judicial system.

In the particular circumstances of this case—where at stake are both the rights of the individual before this Court and the sanctity of the courts generally—we are unprepared to say at this juncture that Taylor has failed to state a claim. Whether or not there is factual support for Taylor's allegations should be the subject of further proceedings before the District Court.

We have concluded that there should have been a hearing in this case. If the Government did, in fact, subpoena the original letter, this should be easily demonstrated. It is frankly and sincerely our hope that such proof is forthcoming, obviating the need for further inquiry. But, on the other hand, if in the course of the hearing Taylor's claims are borne out, the appropriate remedy can be promptly determined.[28]

27. This is sufficient to distinguish such cases as *United States v. Bowers*, 534 F.2d 186, 193 (9th Cir. 1976), where, assuming the appellant's showing was sufficient to establish that his counsel's telephone had been tapped, nothing was offered to suggest any connection between the claimed surveillance and the trial proceedings.

28. While our earlier comments demonstrate our concerns for the due process safeguards which may ultimately come into play in this case, *see* text accompanying notes 16–22 *supra*, we withhold judgment as to the extent of prosecutorial malfeasance or prejudice to the appellant necessary to warrant relief. The District Court will be able to pass on these issues, if they in fact exist, with the assistance of the complete factual record not presently before this Court.

Accordingly, the *coram nobis* writ will be remanded to the District Court for further proceedings in conformity with this opinion.

SO ORDERED.

WALLACE, Circuit Judge, concurring in part and dissenting in part:

I concur in the affirmance of Taylor's conviction (No. 78–2512), but respectfully dissent from the majority's treatment of the *coram nobis* issue (No. 79–1240).

I believe the majority errs in reversing the district judge's holding that the petition for a writ of *coram nobis* is untimely because of the pendency of the direct appeal of conviction. I agree that there is no jurisdictional impediment to hearing a *coram nobis* petition during the pendency of a direct appeal. *Jack v. United States*, 435 F.2d 317, 318 (9th Cir. 1970) (per curiam), *cert. denied*, 402 U.S. 933, 91 S.Ct. 1530, 28 L.Ed.2d 867 (1971); *Womack v. United States*, 395 F.2d 630, 631 (D.C. Cir. 1968) (per curiam). The majority, however, gives short shrift to the requirement that there be "extraordinary circumstances" before such a petition may be reviewed. The basis for this requirement is that "determination of the direct appeal may render collateral attack unnecessary." *Id.* Thus, for example, if we had reversed Taylor's conviction, his petition for a writ of *coram nobis* would have been unnecessary and would have been a waste of judicial resources. By affirming the district judge, we would not deprive Taylor of his opportunity to seek a writ of *coram nobis*. Indeed, the usual procedure is to seek such a writ after the direct appeal is decided.

The majority appears to take the position that because the *coram nobis* claim and the claim on appeal are related, the disposition of the *coram nobis* question could undermine the decision on appeal. This, as I read the majority opinion, provides the "extraordinary circumstance" that warrants the propriety of a collateral attack during the pendency of a direct appeal. To make this the standard for permitting a collateral attack would eliminate the "extraordinary circumstance" requirement. If this reading is correct, regardless of the relationship between the arguments made in support of *coram nobis* and reversal of conviction, granting a writ of *coram nobis* will always, in the sense used by the majority, "undermine" the affirmance of a conviction. The relationship between the arguments on appeal and on *coram nobis* does not strengthen the majority's position. Our disposition of the legal evidentiary question on appeal remains valid regardless of whether the prosecutor's representation was true, just as any disposition of a legal issue on appeal would remain valid even if subsequently set aside on a collateral issue.

The majority appears to treat this case as a limited exception, but has failed to make any analysis of when an "extraordinary circumstance" exists such that a collateral attack pending appeal is permissible. I have been able to locate only one court of appeals opinion to identify an "extraordinary circumstance." In *United States v. Tindle*, 522 F.2d 689 (D.C. Cir. 1975), the court held that a section 2255 motion alleging ineffective assistance of counsel was permissible despite the pendency of an appeal. *Id.* at 692–93. The D.C. Circuit reached this conclusion as the best possible resolution of the tension between its precedents in *Womack v. United States, supra,* and *United States v. DeCoster*, 487 F.2d 1197 (D.C. Cir. 1973). *See United States v. Tindle, supra,* 522 F.2d 692–93 & n.10. Taylor would have us read *Tindle* broadly to stand for the proposition that whenever the desired relief cannot be sought on appeal, it may be sought collaterally pending appeal. I have substantial doubts whether our circuit should adopt even the narrowest reading of *Tindle*, but there is certainly no basis for the broad reading of *Tindle* that Taylor urges. Indeed, even if there were valid reasons for adopting the broad reading, I am not convinced that Taylor had no remedy on appeal. Taylor claims that the basis for his *coram nobis* petition is that the defect, the prosecutor's alleged misrepresentation

about the existence of subpoenas, lies outside the record. As footnote 5 in the majority opinion indicates, the district judge did not require the prosecutor to make an offer of proof of the existence of the subpoenas. This may have been error, but it may have been waived by Taylor's counsel failing to object and, in fact, accepting the prosecutor's oral representations. In any event, it is at least arguable that Taylor had a remedy on appeal. It would have been most efficient for him to raise his arguments on appeal, then, if unsuccessful, seek a writ of *coram nobis*, rather than burden the courts with two simultaneous proceedings.

The majority improperly expands the "extraordinary circumstances" exception to the extent that it effectively eliminates the rule preventing collateral attacks to criminal convictions during the pendency of direct appeals from the convictions. I would hold that the district judge properly dismissed the petition for a writ of *coram nobis* to the extent that the dismissal was without prejudice to Taylor's ability to refile after appeal. Because I think the petition was untimely, I would not reach the issue of whether a hearing should have been held.