**UNITED STATES of America, Plaintiff,**

v.

**Richard E. TAYLOR, Defendant.**

**No. Cr. 77 474.**

United States District Court,
S.·D. California.

Dec. 1, 1981.

Peter Shenas and Michael Cahill, of Shenas, Robbins, Shenas & Shaw, San Diego, Cal., for petitioner.

James Henderson and Bruce Kelton, U. S. Dept. of Justice, Los Angeles, Cal., for respondent.

OPINION

STEEL, Senior District Judge: *

The defendant was convicted by a jury for interstate wire fraud in violation of 18 U.S.C. § 1343 (1976) and was sentenced to imprisonment for a year and a day and fined one thousand dollars. The conviction was affirmed on appeal, *United States v. Taylor,* 648 F.2d 565 (9th Cir. 1981), and *certiorari* has been denied, —— U.S. ——, 102 S.Ct. 329, 70 L.Ed.2d 168 (1981).

During the pendency of the appeal defendant filed a petition for a writ of *coram nobis* with the district court. The petition alleged that during the trial an error of such fundamental nature was committed as

\* Sitting by assignment from the United States    District Court for the District of Delaware.

to effect the validity and regularity of the proceedings and violated the due process rights of the defendant. More particularly the petition alleged that

"[E]vidence was admitted during the trial on the basis of misrepresentations of fact by the Special Attorney, U. S. Department of Justice, to wit: that a photocopy of Exhibit "24" was admitted into evidence, based on the misrepresentations of BRUCE KELTON, Esq., that the original of Exhibit "24" had been subpoenaed for the trial from PH&D, Inc., Home Federal Savings and Loan Association and Allied Bank of Texas (also known as Continental Bank); that in truth and fact, no such subpoena had been issued and said fact was known at the time by BRUCE KELTON, Esq.; that the Court admitted Exhibit "24" on the basis of and in reliance upon the aforesaid misrepresentations; that no other evidence concerning the issuing or serving of said subpoenas was received; that the Court was misled by said misrepresentations; that the admission of Exhibit "24" was material to the case in that it was evidence capable of influencing the jury; that the Defendant's right to due process of law as protected by the Fourteenth Amendment has been thereby violated; and that, therefore, the Conviction and Sentence should be vacated."

The district court denied the petition without a hearing. Upon appeal it was held that an evidentiary hearing should have been held and the case was remanded. *United States v. Taylor, supra,* at 568–76 (with one dissent).

The Court of Appeals held:

"[P]rosecutorial misconduct may so pollute a criminal prosecution as to require a new trial, especially when the taint in the proceedings seriously prejudices the accused. . . .

Thus, a claim of prosecutorial impropriety of the type pleaded in the subject motion may be a basis for relief in a *coram nobis* action.

. . . .

. . . [W]e are unprepared to say at this juncture that Taylor has failed to state a claim. Whether or not there is factual support for Taylor's allegations should be the subject of further proceedings before the District Court."

648 F.2d at 571, 574.

The foregoing principle of prosecutorial impropriety must be applied and a new trial granted if the allegations of the petition are substantiated by the evidence.

Following the remand an evidentiary hearing was held by the judge who had tried the case.

An important question in the trial was whether defendant had signed on behalf of Home Federal in California a so-called commitment letter dated January 16, 1975, addressed to PH&D (which PH&D had assigned to Continental Bank) and had caused a signed telecopy of the letter to be sent to Texas.[1] Neither the original nor the telecopy nor any document with an ink signature of the defendant was ever produced at the trial. The Government tendered and the Court accepted in evidence Exhibit 24 which was either a photocopy of the telecopy or a photocopy of a photocopy of a telecopy. Without proof of the original letter or a legally admissible signed telecopy which had been sent from California to Texas, it is questionable whether the defendant could have been convicted.

Exhibit 24 was admitted in evidence as secondary evidence. The Court admitted Exhibit 24 in reliance upon an oral representation made by Mr. Kelton, the Assistant United States Attorney who had prosecuted the case, that the Government had been unsuccessful in attempting to obtain the

1. Relying upon the commitment letter Continental Bank had loaned PH&D $1,970,000. Out of this PH&D paid Home Federal $1,400,000 to liquidate a previous loan which Home Federal had made to PH&D in connection with the so-called Villa Espania Project. When PH&D defaulted on its $1,970,000 loan from the Continental Bank, the latter sought to hold Home Federal liable on the commitment letter. Home Federal denied liability and civil litigation ensued between the Bank and Home Federal.

original letter by subpoenas served upon the Continental Bank, PH&D (referred to as Wittman's corporation) and Home Federal. The defendant accepted the representation without requiring proof of its accuracy. The critical part of the colloquy between the Court and counsel on this subject is set forth in *United States v. Taylor, supra,* at 568, n.5 as follows:

> THE COURT: Well, now, here's my ruling. I understand your point. I am going to overrule your objection to the admissibility, and the evidence in the case will have to be whatever it is concerning what [Exhibit "24"] purports to be—ultimately turns out to be.
>
> MR. SHENAS [Defense Counsel]: Is that ruling based on a representation that the original of this letter has been subpoenaed from [Continental], from [Wittman's corporation], and from Home Federal by the Government?
>
> THE COURT: Yes.
>
> MR. SHENAS: Thank you.
>
> THE COURT: Now, do you want something—and that's a representation you are willing to rely on?
>
> MR. SHENAS: Your Honor, I don't know if that's true or not. *If counsel will tell me that's true, I will believe it.* He hasn't said that—anything.
>
> MR. KELTON [Prosecuting Attorney]: What?
>
> MR. SHENAS: That the original of that document was subpoenaed by the Government from [Continental], [Wittman's corporation], and Home Federal.
>
> MR. KELTON: When the Grand Jury investigation was—
>
> THE COURT: Now, can't you answer that question directly?
>
> MR. KELTON: When the Grand Jury investigation was initiated—
>
> THE COURT: Can't you answer it "yes" or "no"?
>
> MR. KELTON: Yes.
>
> THE COURT: Is that the answer, "Yes"? All right. Now, this is important when you come down to make a representation of that kind.

> MR. KELTON: Judge, I must say for the record that there's no original that could be located. But I am making this statement after subpoenaes, after speaking to the attorneys, after speaking to everybody involved in this transaction, and I really object to Mr. Shenas' implication that somebody has tampered with this evidence.
>
> THE COURT: Just a minute. I am the person who is asking the question, whether [Wittman's corporation] has been subpoenaed, Home Federal has been subpoenaed, and the bank in Texas has been subpoenaed for the production of the original letter of January 16, 1975—which was Telexed to Texas.
>
> MR. KELTON: Yes, they have, and I would also say this, your Honor: There is no way that the original letter could have been in Texas because it was Telexed. That's the point.
>
> THE COURT: Well, it would then show up with Home Federal, wouldn't it?
>
> MR. KELTON: Home Federal does not have it.
>
> THE COURT: All right. It's been subpoenaed there. That's the only thing I am asking about, and you said it has been. So that's enough. That's what you have said and we needn't have any more explanation.
>
> And on that basis, I will accept this in evidence as secondary evidence.
>
> Now, you know the responsibility you are assuming when you say it's been subpoenaed. Don't look so disheartened.
>
> MR. KELTON: I'm not disheartened, Judge. The only point I am trying to make is that I made a good faith offer of proof to the Court—
>
> THE COURT: I am not suggesting you didn't make it in good faith. I am asking about a foundation for it, for my accepting in evidence secondary evidence.
>
> MR. KELTON: I would just like to put my position on the record, your Honor. It would take one second. That is this: That all I have to do to lay that foundation through this witness is establish a record that that was kept in the ordinary

course of business at [Wittman's corporation], and that they do not have the original available. And that is my position under the Federal Rules. And I think I have made that clear.

THE COURT: All right. I will admit the document on the basis of secondary evidence because of your inability through subpoena power to produce the originals.

At the *coram nobis* hearing the defendant conceded that the Government had served a subpoena upon the Continental Bank to compel the production of the original commitment letter. As a result the defendant limited itself to contending that the Government falsely represented that it had subpoenaed PH&D and Home Federal in an attempt to obtain the original letter (157).[2] The defendant argued that the conviction should be set aside even though Mr. Kelton's failure to disclose the true facts was not due to a malicious intention but was the result only of carelessness and negligence. A careless or negligent misrepresentation, the defendant argued, was the equivalent of an intentional misrepresentation (153). This principle may be assumed to be true.

█ The heart of the defendant's contention is that the language of the subpoenas directed to PH&D and to Home Federal did not call for the production of the original letter of January 16, 1975, and that the Court is required to determine whether Mr. Kelton made a misrepresentation solely from the language of the subpoenas without regard to related circumstances (96–97). This position is unacceptable. The Court cannot fairly determine whether Mr. Kelton was guilty of knowingly or negligently misrepresenting the facts with which he is charged unless the Court is informed of all of the circumstances known to Mr. Kelton at the time when the statements were made.

### The Subpoena Addressed To Home Federal

The trial was begun on March 16, 1978 (27). The subpoena directed to Home Fed-

eral was dated February 13, 1978 and served on February 15, 1978 (GX III). The subpoena called for the production of

"(a) All files relating to the Villa Espania Project."

The defendant argues that this language did not specifically require Home Federal to produce the original January 16, 1975 letter, that it was not within the breadth of the subpoena language, and hence that the statement of Mr. Kelton to the Court that the Government had subpoenaed Home Federal to produce the original letter was not true.

Mr. Kelton explained why he told the trial court that the original letter of January 16 was called for by the "Villa Espania Project" description. He said that the copy of the commitment letter itself, Exhibit 24, was referenced to the Villa Espania Project. The subject caption of the letter read:

"Villa Espania Condominium & Sacramento Industrial Park"

He also testified that the money which PH&D was to receive on the Continental Bank loan to PH&D was to be used in part by PH&D to liquidate the loan which Home Federal had made to PH&D in connection with the Villa Espania Project. Furthermore, Mr. Kelton testified that he had spoken with Mr. Huiskamp, Home Federal's attorney, and with Mr. Young, the Custodian of Records of Home Federal, and that they had agreed that the effective way to obtain all documents relevant to the defendant's trial was to subpoena all files relating to Villa Espania. Mr. Kelton testified that he and Messrs. Huiskamp and Young had specifically discussed the fact that the commitment letter was "referenced" to Villa Espania and that the commitment letter was called for by the subpoena (70–73).

Mr. Huiskamp testified that Home Federal maintained no file to cover the commitment letter, that the Villa Espania file dealt with the loan which Home Federal had made to PH&D on Villa Espania, and

---

**2.** Page references are to the transcript of the *coram nobis* hearing.

contained all of the correspondence between the attorneys at the Continental Bank and Home Federal (132). The Villa Espania file, Mr. Huiskamp said, would have had correspondence with regard to the commitment letter (133). Mr. Huiskamp stated that he was aware of Mr. Kelton's desire to locate the original commitment letter and in fact had told Mr. Kelton what to describe in the subpoena (130). He told Mr. Kelton that Home Federal had never found the original commitment letter, that it had copies, "and that whatever we had regarding that letter would be in the file.... everything of that nature would be in the Villa Espania file." (133).

█ The fact is that copies of the January 16, 1975 letter were included in the materials that were produced pursuant to the subpoenas served upon Home Federal (125). In the light of this fact and the testimony of Mr. Huiskamp, it is not only a fair inference but a compelling one that if the original letter had been in the file of Home Federal it would have been produced under the subpoena.

Defendant points to the difference between the description of the documents called for in the subpoena served on Home Federal and those specified in the subpoena served upon the Continental Bank. Compare Government Exhibit III and IV. The Home Federal subpoena is limited to "all files relating to the Villa Espania Project." The Continental Bank subpoena called for files pertaining to the loan of $1,970,000 which Continental made to PH&D and for which Home Federal was committed by its letter of January 16, 1975, and for "commitments made by ... Richard Taylor and/or Home Federal...." Defendant emphasizes that both the subpoenas were prepared by Mr. Kelton on the same date, February 13, 1978, and argues that if Mr. Kelton was seeking to obtain the production of the January 16, 1975 commitment letter from Home Federal the description in the Home Federal subpoena would have been as specific as the description in the subpoena addressed to Continental Bank. Whatever force this may have as an abstract matter,

the weight of the argument is overborne by the testimony of Mr. Kelton and especially Mr. Huiskamp. The latter convincingly explains why Mr. Kelton should have understood that the Home Federal subpoena which called for Villa Espania Project documents would have produced the original commitment letter if it was in the files of Home Federal.

Mr. Kelton had every right to believe, as he told the trial court, that the subpoena served on Home Federal called for the production of the original commitment letter. His representation was made neither recklessly nor carelessly.

### The Subpoena Addressed to PH&D

Exhibit 24 was admitted as secondary evidence relying upon the Government's representation that the original document had been unsuccessfully subpoenaed from "Wittman's corporation." It is clear that PH&D was intended and understood by everyone. Actually, no subpoena was served upon PH&D or any other "Wittman's corporation." The subpoena which the Government undoubtedly referred to was addressed to and served upon Stephen C. DeLong, in connection with a Grand Jury investigation. Mr. DeLong was the president of PH&D. The subpoena was dated September 21, 1976, and was prepared by Robert C. Thaller, Special Attorney for the Government before Mr. Kelton came into the present case (30), in November, 1977, a little after the completion of the Grand Jury investigation (32). The subpoena called for the production of:

"all records of PHD and A and PH&D, Inc., to include all records of accounts receivable and accounts payable, cash receipts and disbursements, cancelled checks, check stubs and bank statements and documents of incorporation and records of stockholders."

The defendant makes a number of arguments in an attempt to support his assertion that Mr. Kelton had misrepresented the fact when he told the trial court that the Government had subpoenaed the original commitment letter from "Wittman's

corporation." He argues that the subpoena was not addressed to PH&D and that although DeLong may have been the president of the corporation the subpoena did not describe him as such nor as the custodian of the records. Furthermore, the subpoena, the defendant correctly states, was issued about a year and a half before the present case was begun in connection with a Grand Jury investigation. Finally, defendant argues the description of the documents called for did not include the commitment letter of January 16, 1975.

No significance attaches to the fact that the subpoena was issued in connection with the Grand Jury investigation rather than the present case. *See United States v. Taylor,* 648 F.2d 565, 566, 570–71, notes 13 and 15 (9th Cir. 1981). Moreover, there was apparently no desire on Mr. Kelton's part to conceal from the trial judge the fact that the subpoena had been issued in a Grand Jury proceeding. He was cut off twice from doing so by the trial judge because the latter believed the fact to be irrelevant. It is, of course, conceivable that a Grand Jury proceeding may be so remote in time from a trial as to render the Government's unsuccessful effort to subpoena an original document in a Grand Jury proceeding to be an insufficient basis for a trial court to admit a copy as secondary evidence. That was not true in the instant case. The Grand Jury subpoena was issued on September 21, 1976, and was served on September 29, 1976 (GX II, GX IX) and the commitment letter addressed to PH&D was dated January 16, 1975. Since the original letter was not produced when the Grand Jury subpoena was served on September 29, 1976, it cannot be supposed that it would or could have been produced by DeLong or PH&D if a later subpoena had been served upon them just prior to the trial.

Defendant has made much about Mr. Kelton's failure to disclose that the PH&D subpoena was a Grand Jury subpoena. Defendant knew or should have known of this fact during the trial. The affidavit of Steven D. Guy dated November 14, 1978 states that he assisted in the representation of the defendant at the trial. He also states that

Mr. Siefers, the FBI Agent who had assisted the Government in the Grand Jury investigation and in the trial of the defendant, had advised him "during the course of the trial" that "while the January 16 letter had possibly been subpoenaed from all three entities [PH&D, Continental Bank and Home Federal] for purposes of the Grand Jury, he was quite sure that the letter had not been subpoenaed from at least two of these entities for purposes of this trial." (Ex. 14). Had defendant during the trial raised any question about Mr. Kelton's representation, the subpoenas and witnesses were in Court and Mr. Kelton was prepared to produce the subpoenas and have the witnesses testify about them (54–55, 59). It was during the trial that the defendant should have challenged the existence and validity of the subpoenas and not have remained silent until he filed his *coram nobis* petition.

The facts concerning the DeLong subpoena are these. It was prepared by Mr. Thaller before Mr. Kelton came into the case. At that time Mr. Siefers, the Special Agent of the FBI, was in charge of investigating the Saratoga Corporation and related entities of which PH&D was one (87, 89). Mr. Siefers caused the subpoena to be served upon Mr. DeLong in Kansas City. The records called for by the subpoena were in San Diego. Mr. Siefers testified that Mr. DeLong directed his attorney, Mr. Seitman, to give Mr. Siefers the records in San Diego. Mr. Seitman was the attorney for DeLong and PH&D in certain civil litigation (90). After Mr. Seitman obtained authority from his clients he handed Siefers "an entire box full of records which had correspondence, accounting documents, cancelled checks, the whole gambit of the corporation." (90).

Defendant conceded that if DeLong had the documents in his possession or control he would have been required to "cough them up." The sequence of events following the service of the subpoena on DeLong establishes unmistakably that he had control over them (159). When Mr. Thaller turned the case over to Mr. Kelton, he

explained to the latter that the Government had obtained all of the records called for by the subpoena, showed him the file and the two, together with Mr. Siefers, went through the records together. The original January 16 letter was not among the records. There was only the copy which was introduced in evidence (50).

The documents called for by the subpoena included "all records of PHD and A and PH&D." This all-embracing language would have required the production of the original commitment letter if PH&D or DeLong had it. This was true even if it was not included in the documents which followed the general language.

The requirement of the Court of Appeals that there be an evidentiary hearing on the misrepresentation issue appears to rest largely upon the affidavit of Steven D. Guy previously referred to. He did not appear at the *coram nobis* hearing and no explanation was offered for his absence. This was curious since Mr. Siefers appeared and flatly controverted virtually everything which Mr. Guy had stated in his affidavit concerning his conversation with Mr. Siefers (106). The facts in the Guy affidavit which were a primary basis for the Court of Appeals remanding the *coram nobis* phase of the case were not substantiated.

The defendant conceded that in a *coram nobis* hearing the burden of proof lies with the defendant (150). The defendant has failed to carry this burden. On the contrary, the record establishes that Mr. Kelton spoke truthfully when he told the Court the Government had attempted to obtain the original commitment letter by subpoenas from Continental Bank, Home Federal and PH&D. There was no concealment by Mr. Kelton of any significant fact related to the information which he advised the Court. Had every fact been revealed at the trial which has been placed before the Court at this *coram nobis* hearing, the Court would have admitted Exhibit 24 as secondary evidence.

The petition for a writ of *coram nobis* will be denied.