**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gordon WALGREN,**
**Defendant–Appellant.**

**Nos. 88–3232, 88–3257.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 5, 1989.

Decided Sept. 13, 1989.

James K. Sells, Bremerton, Wash., McClusky, Sells, Ryan, Olbertz & Haberly, Catherine W. Smith and Howard M. Goodfriend, Edwards & Barbieri, Seattle, Wash., for defendant-appellant.

Stephen C. Schroeder, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Before ALARCON and THOMPSON, Circuit Judges, and TASHIMA,* District Judge.

TASHIMA, District Judge:

## BACKGROUND

Gordon Walgren, former Senate Majority Leader of the Washington State Legislature, was indicted on nineteen counts of bribery, mail and wire fraud, and violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"). The indictment resulted from a two-year investigation by the Federal Bureau of Investigation ("FBI") into gambling and alleged political corruption in the State of Washington. At trial, the district court granted a motion for acquittal on six counts at the close of the government's case. On the remaining 13 counts, the jury found Walgren not guilty of five, failed to reach a verdict on five, and found him guilty on three counts: mail fraud, 18 U.S.C. §§ 1341 & 1342 (Count XXIV), Travel Act, 18 U.S.C. § 1952 (Count XVII), and RICO, 18 U.S.C. § 1962 (Count II). Walgren was sentenced to three concurrent five-year terms of imprisonment. The convictions were affirmed on appeal, *United States v. Bagnariol*, 665 F.2d 877 (9th Cir.1981), and Walgren's petition for writ of certiorari was denied. *Walgren v. United States*, 456 U.S. 962, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982). Walgren has served his sentence and completed his parole. He now seeks to have his mail fraud and RICO convictions vacated by writ of error coram nobis, and seeks a new trial on his Travel Act conviction.

Walgren's Travel Act conviction was based on allegations that he used the telephone with the intent to promote and carry on bribery in violation of state law and to promote and carry on extortion in violation of federal law. The conversation took place between Walgren and an FBI undercover agent, who was posing as a California businessman. During the conversation they discussed a pending state gambling bill and the potential sale, for an inflated price, of a trucking business in which Walgren had an interest.[1]

Walgren's mail fraud conviction was based on the mailing of a campaign disclosure form that "furthered a scheme to defraud" the citizens of Washington. The disclosure form listed political contributions by Citizens for Gordon Walgren, an independent committee supporting his then planned but unannounced 1980 campaign for State Attorney General. The jury found that Walgren caused the committee to fail to report the purchase and contribution of a "clipping service" from the undercover FBI agent.

---

\* Honorable A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation.

1. We note that the acts alleged under this count are entirely different from those alleged under the mail fraud count.

**1420**

The jury did not specify on which racketeering acts it based Walgren's RICO violation. We assume they relied on the mail fraud and Travel Act convictions because they found him not guilty of, or failed to reach a verdict on, all the other charges listed as predicate acts.[2]

In 1984, Walgren filed two motions with the district court seeking a new trial on his Travel Act conviction and requesting that his mail fraud and RICO convictions be vacated pursuant to a writ of error coram nobis. After a number of earlier continuances, in July 1985, the magistrate granted an open-ended continuance "until further order of this court" so that Walgren could pursue a civil action under the Freedom of Information Act, 5 U.S.C. § 552a ("FOIA"). Walgren re-noticed the motion for April 8, and again for May 6, 1988.

Walgren's motion for a new trial was based on asserted new evidence obtained from the FBI through his FOIA requests. The district court rejected his motion for a new trial concluding that its jurisdiction had lapsed because of the "grossly excessive" delay. Alternatively, the court also rejected the motion on the merits. *United States v. Walgren*, 695 F.Supp. 495, 503 (W.D.Wash.1988).

The coram nobis petition was based on the Supreme Court's decision in *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). In *McNally*, the Court held that the mail fraud statute, 18 U.S.C. § 1341, protects only tangible property rights, not the intangible rights of the citizenry to good government. Walgren argues that because the jury was instructed that it could convict him of mail fraud by finding that he furthered a scheme to deprive Washington citizens of the intangible right to honest government, he was convicted for an act which is not a crime. The magistrate agreed with Walgren, and recommended vacating both the mail fraud and RICO convictions. The district court disagreed with the magistrate's recommen-

dation, and denied Walgren's request to vacate the convictions. 695 F.Supp. at 496–503. Walgren now appeals the district court's ruling on both motions.

## DISCUSSION

The district court had jurisdiction under 18 U.S.C. § 3231 and 28 U.S.C. § 1651. We have jurisdiction under 28 U.S.C. § 1291.

### I. CORAM NOBIS

In *United States v. Morgan*, 346 U.S. 502, 511, 74 S.Ct. 247, 252, 98 L.Ed. 248 (1954), the Court held that coram nobis relief is available to vacate a conviction even when the defendant is no longer in custody. The writ provides a remedy for those suffering from the "lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact" and "egregious legal errors." *Yasui v. United States*, 772 F.2d 1496, 1498, 1499 & n. 2 (9th Cir.1985). The All Writs Act, 28 U.S.C. § 1651(a), authorizes district courts to issue the writ. *Morgan*, 346 U.S. at 506, 74 S.Ct. at 250. We review *de novo* the denial of the writ as if it were a dismissal of a claim under 28 U.S.C. § 2255. *E.g., United States v. Taylor*, 648 F.2d 565, 571–73 (9th Cir.1981).

To qualify for coram nobis relief, the petitioner must demonstrate each of the following four factors:

"(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character."

*Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir.1987). While it recognized that Walgren could not have his convictions vacated by the more usual remedies, the district court held that Walgren failed to

---

**2.** All of the predicate acts charged in the RICO count had a corresponding separate substantive count, except the charge of state bribery. That charge alleged that Walgren agreed to accept 6% of future profits of the FBI's "front" company, SoCal, in return for helping to legalize gam-

bling. (Indictment pp. 37–38.) We assume that the jury found him not guilty of the *acts* underlying the state bribery charge because it found him not guilty of Count III (18 U.S.C. § 1951), which alleged essentially the same acts.

prove the other three elements. We discuss each of these in turn.

## A. *Valid Reason For Not Attacking the Conviction Earlier*

The district court declined to apply *McNally* retroactively to Walgren's conviction and ruled, in effect, that he should have raised the invalidity of the intangible rights theory on direct appeal. In a recent habeas corpus decision, we held that *McNally* is fully retroactive. *United States v. Mitchell*, 867 F.2d 1232, 1233 (9th Cir.1989) (per curiam). There being no principled basis for distinction, we now hold, as has the Fourth Circuit, that *McNally* is also fully retroactive in coram nobis proceedings. *See United States v. Mandel*, 862 F.2d 1067 (4th Cir.1988) (cited in *Mitchell*, 867 F.2d at 1233).[3]

## B. *Adverse Consequences*

Citing *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), *Hirabayshi* held that a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction. 828 F.2d at 606. "We have repeatedly reaffirmed the presumption that collateral consequences flow from any criminal conviction," and the government carries the burden of disproving this presumption. *Id.*[4]

In *Hirabayshi*, we held that misdemeanor convictions could carry collateral legal consequences. "Any judgment of miscon-duct has consequences for which one may be legally or professionally accountable. *See Miller v. Washington State Bar Ass'n*, 679 F.2d 1313, 1318 (9th Cir.1982) (letter of admonition in attorney's permanent record for which he is professionally accountable constitutes sufficient adverse consequences for Article III.)" *Id.* at 606–07.

Despite this liberal presumption, the district court concluded that Walgren failed to demonstrate sufficient adverse consequences. 695 F.Supp. at 502. The district court noted that in *Hirabayshi* and *Sibron*, the courts reversed all charges against the defendants, while Walgren would still be burdened with at least one felony conviction, the Travel Act count.[5] Thus, vacating the mail fraud conviction would not have the same effect as vacating all of the convictions.[6] For example, based solely on his Travel Act conviction, Walgren still may not serve as executor of an estate, may be challenged for cause as a juror and may be denied the opportunity to be a notary public.

The one remaining tangible adverse consequence is if Walgren is convicted again of another crime, his sentence might be enhanced by the number of his previous convictions. The district court rejected this argument because a concurrent sentence was imposed on Walgren "treating the three counts as a single offense arising from a single course of conduct." 695 F.Supp. at 502. Although a defendant's record of past criminal conduct is relevant

---

**3.** The government relies upon *United States v. Keane*, 852 F.2d 199 (7th Cir.1988), and *United States v. Osser*, 864 F.2d 1056 (3rd Cir.1988), for the proposition that *McNally* should not be applied retroactively. The government's reliance is misplaced. In both cases, although the courts declined to grant coram nobis relief, they recognized that *McNally* should be applied retroactively.

**4.** Walgren cites *United States v. DeBright*, 730 F.2d 1255 (9th Cir.1984) (*en banc*), to support his argument that he will suffer adverse consequences if the conviction is not vacated. *De-Bright* held that an unreviewed conviction may not be affirmed on the basis of the "concurrent sentence" doctrine. *Id.* at 1258. Originally, the doctrine was available only if the unreviewed conviction had no adverse collateral legal consequences. Questioning its "ability to ascertain all

the adverse collateral legal consequences of unreviewed convictions," *id.*, the court concluded that the merits of all counts of conviction on appeal be addressed. *Id.* at 1259. In the context of the case at bench, *DeBright's* teaching does no more than emphasize the conclusion that convictions are presumed to give rise to adverse consequences.

**5.** Note, however, that the district court in *Hirabayshi* did *not* vacate all of the convictions even though it still concluded that coram nobis relief was appropriate. *Hirabayshi*, 627 F.Supp. 1445, 1455 (W.D.Wash.1986).

**6.** Note, however, that Walgren might be entitled to a new trial on his Travel Act conviction. *See* Part II, *infra*. The remaining discussion assumes that the Travel Act conviction will stand.

to sentencing, the district court concluded that vacating the mail fraud count would not affect any future sentencing determinations.

The Guidelines issued by the United States Sentencing Commission treat related counts charged in a single indictment as a single offense. United States Sentencing Commission Guidelines ("Guidelines"), § 4A1.2(a)(2), *Definitions and Instructions for Computing Criminal History, Prior Sentence Defined.* When determining how many additional "points" to add to a defendant's criminal history category, a sentencing judge would only use the longest sentence of imprisonment if concurrent sentences were imposed. To this extent, the district court was correct.

Other sections in the Guidelines, however, suggest that Walgren's mail fraud conviction could affect future sentencing. The Guidelines contemplate that a judge may consider imposing a sentence that departs from the otherwise applicable Guidelines' range if reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes. Guidelines, § 4A1.3 (*Adequacy of Criminal History Category*) (Policy Statement). The Guidelines also state that convictions that are vacated should not be counted, thus implying that a judge can consider all convictions. (§ 4A1.2 *Definitions and Instructions for Computing Criminal History,* Commentary 6.)

More fundamentally, however, it cannot be said that the existence of an additional felony conviction, even if it does not affect a defendant's criminal history category, will have no possible adverse consequence in the sentencing judge's sentence within the guideline range. More than a possibility exists that the existence of an additional felony conviction will militate against a sentence at the lower end of the guideline range. *See* 18 U.S.C. § 3553(c)(1) (court

must state its reasons "for imposing a sentence at a particular point within the [guideline] range"). Thus, the possibility exists that Walgren might suffer an adverse consequence if his mail fraud (or RICO) conviction is left standing.

Further, Walgren may be impeached should he ever testify in court because the mail fraud conviction was based on a scheme to defraud. *Hirabayshi v. United States,* 627 F.Supp. 1445, 1455 (W.D.Wash. 1986), *aff'd,* 828 F.2d 591 (9th Cir.1987). In light of these possible adverse consequences, the government has failed to demonstrate that Walgren will suffer no adverse consequences from his conviction.

### C. *Fundamental Error*

The district court held that Walgren's conviction did not result from a fundamental error because the conduct charged in the indictment still falls within the reach of the mail fraud statute. Therefore, although the jury may have been wrongly instructed in light of *McNally,* they could have found Walgren guilty of a crime. We read the indictment differently; Walgren was convicted of perpetrating a scheme that did not violate the mail fraud statute.

The district court based its decision upon a "constructive trust" theory. Under that theory, if an employee of the State accepts bribes, he violates "his duty of loyalty to the people of the State, and under agency principles is subject to a liability to deliver the bribe, its value, or its proceeds, to the principal." 695 F.Supp. at 503. According to the district court, Walgren defrauded the people of the State of something of monetary value when he received the clipping service without reporting it on the public disclosure form; therefore, his crime still falls within the ambit of the mail fraud statute.[7]

As the government notes, this Circuit has yet to rule directly on the constructive

7. The district court also sought to distinguish Walgren's case from *McNally* because Walgren's mail fraud indictment included allegations that he committed a crime (bribery), while the defendants in *McNally* were only charged with

violating ethical duties. *McNally,* 107 S.Ct. at 2882 n. 9. This Circuit rejected that distinction in *United States v. Egan,* 860 F.2d 904, 910 (9th Cir.1988).

trust theory. Walgren contends that the theory was rejected in *United States v. Hilling*, 863 F.2d 677 (9th Cir.1988). *Hilling* involved a scheme by directors of savings and loan associations to defraud the institutions of money by making loans to each other in exchange for kickbacks; the defendants in that case claim that the jury instructions were infected with the discredited "intangible property" language. We reversed the convictions, but did not specifically analyze the possibility that the institutions were harmed by the kickbacks even if they did not suffer a monetary loss. Therefore, *Hilling* does not support Walgren's position.

In support of the constructive trust theory, the government relies upon *United States v. Runnels*, 833 F.2d 1183 (6th Cir. 1987), *reversed and vacated*, 877 F.2d 481 (6th Cir.1989) (*en banc*).[8] In *Runnels*, the panel concluded that "the economic deprivation to the principal which occurs when the fiduciary knowingly breaches his duty by accepting a bribe, the value of which properly belongs to the principal, is itself sufficient to support a finding of taking of value." 833 F.2d at 1187. The panel found that this value constitutes the loss of money or property that *McNally* requires for a finding of mail fraud. As indicated, the panel decision in *Runnels* has been vacated by the *en banc* court; therefore, the decision is no longer of precedential value.

Moreover, a number of other circuits have found the *Runnels'* analysis to be unpersuasive. In *United States v. Ochs*, 842 F.2d 515, 525–27 (1st Cir.1988), the court concluded that the expansive view of property protected by the mail fraud statute adopted in *Runnels* is irreconcilable with the basic holding of *McNally*. In *McNally* "[w]ith the issue squarely before it, the court held that the mere fact that a fiduciary profits from a breach of duty is not a sufficient property deprivation to satisfy the requirements of the mail fraud statute if the profit was not, directly or indirectly, at the principal's expense." *Id.* at 526.

Similarly, in *United States v. Holzer*, 840 F.2d 1343, 1346–48 (7th Cir.), *cert. denied*, — U.S. ——, 108 S.Ct. 2022, 100 L.Ed.2d 608 (1988), the Seventh Circuit concluded that the constructive trust theory does not satisfy *McNally* because retaining a bribe or kickback does not divert money intended for the employer, and thus does not deprive the employer of property that is rightfully his.

A constructive trust is imposed on the bribes not because Holzer intercepted money intended for the state or failed to account for money received on the state's account but in order to deter bribery by depriving the bribed official of the benefit of the bribes. Unless we assume unreasonably that the state wants Holzer to take bribes so that it can recoup them under constructive trust principles, the state's financial situation is the same whether he takes bribes or doesn't take bribes. The only difference between the two situations is that in the first Holzer has deprived the state of its intangible right to honest civil servants. This is an intangible-rights case and only an intangible-rights case.

*Id.* See also, *United States v. Shelton*, 848 F.2d 1485, 1491–92 (10th Cir.1988) (*en banc*). We similarly conclude that the panel decision in *Runnels* is unpersuasive and hold that the "constructive trust" or "economic benefit" theory is inconsistent with *McNally*.

▇ The government also relies on *Carpenter v. United States*, 484 U.S. 19, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987), but it reads that decision too broadly. *Carpenter* involved the conviction of a reporter for *The Wall Street Journal* for violations of federal securities laws, as well as mail and wire fraud. The reporter entered into a scheme to give members of a brokerage firm advance information as to the timing and contents of the newspaper's "Heard on the Street" column, that discussed selected stocks. This advance information permitted the defendants to buy or sell stocks

---

**8.** The *en banc* court vacated the panel decision and reversed the defendant's conviction. The court did not address the "economic benefit" or "constructive trust" theory developed by the original panel because it concluded that the only theory on which the government indicted and prosecuted Runnels was the intangible rights theory. 877 F.2d at 484–85.

**1424**

based on the probable impact of the column on the market. *Id.* 108 S.Ct. at 319. The court held that the "intangible nature" of the *Journal's* confidential business information (the publication schedule and contents of the column) did not leave the property unprotected by the mail and wire fraud statutes. *Id.* at 320. Thus, because the information was the *Journal's* property, any personal benefit the defendants derived from exploiting that knowledge had to be returned to the *Journal. Id.* at 321.

In contrast, Walgren's indictment contains no mention of state property, even of an intangible nature. When Walgren allegedly took a bribe he was not exploiting proprietary information of a confidential nature acquired by virtue of a confidential or fiduciary relationship. Rather than citing any such information, the district court concluded that Walgren defrauded the state by misusing his office to accept a bribe. This argument merely mimics the "intangible right" theory rejected in *McNally.*

The government does not contend that Walgren defrauded the State of any other property, either tangible or intangible. Therefore, cases where other property rights are involved are inapplicable. *See, e.g., Osser,* 864 F.2d at 1063–64 (jury instructed that the city suffered a financial detriment as a result of the kickbacks and commissions that the defendant received); *United States v. Piccolo,* 835 F.2d 517 (3d Cir.1987) (jury instructed that defendant's scheme had deprived his employer of money *and* honest and faithful services; because instruction in the conjunctive jurors could not have found defendant guilty without finding that an object of the scheme was to obtain property from the victim), *cert. denied,* — U.S. —, 108 S.Ct. 2014, 100 L.Ed.2d 602 (1988).

Walgren's mail fraud conviction rests upon the commission of a fraud that was not a crime.[9] This conviction constitutes a fundamental error and must be vacated because, as explained above, Walgren continues to suffer lingering consequences from his conviction.

### D. The RICO Count

▮▮ Walgren asserts that if his mail fraud conviction is vacated, his RICO conviction (Count II) must also be vacated. To be liable under RICO, the defendant must be guilty of a "pattern of racketeering activity," which requires at least two separate racketeering acts (often called "predicate acts"), 18 U.S.C. § 1961(5); *Medallion Television Enter. v. SelecTV of Calif.,* 833 F.2d 1360, 1362 (9th Cir.1987). If convictions for all of the predicate offenses underlying a RICO count are vacated, then conviction for the RICO count also must be vacated. *See United States v. Truglio,* 731 F.2d 1123, 1132 (4th Cir.1984). A number of circuits have held that if one of the predicate offenses underlying a RICO count is vacated, the RICO count should also be vacated. *See Mandel,* 862 F.2d at 1074 (RICO charge had to be vacated because court could not know whether jury considered vacated mail fraud charge or bribery charge or both); *United States v. Joseph,* 781 F.2d 549, 554 (6th Cir.1986) (RICO conviction reversed because one of offenses relied on by jury reversed). Walgren contends that if the mail fraud conviction is vacated, only one identifiable predicate act that could serve as the basis for the RICO violation remains. Without two separate predicate acts to sustain the RICO charge, it must be vacated as well. In addition to the mail fraud conviction, Walgren was convicted of one other "substantive" crime, violation of the Travel Act.

The government makes two arguments why the RICO conviction should not be vacated. The first argument starts with the premise that the jury could have convicted Walgren under the Travel Act for *either* a violation of state law bribery *or* extortion in violation of 18 U.S.C. § 1951, or both. On the face of the record, there is no way to determine what finding the jury made on this point. The government ar-

9. The Anti–Drug Abuse Act of 1988, Pub.L. No. 100–690, § 7603, 102 Stat. 4181, 4508 (1988), added a new section to the mail fraud chapter that overturned *McNally* and broadened the term "scheme" to include "a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346.

gues, however, that the Travel Act conviction contains two separate acts of racketeering "inherent" in the single Travel Act violation. Clearly, if the jury found Walgren guilty of bribery, then they also found him guilty of extortion because both involve the receipt of some benefit in return for some favor. According to the government, however, if the jury found Walgren guilty of extortion, it also must have found him guilty of bribery as well because a bribery offense is an inherent part of extortion. "Thus, [according to the government] the Travel Act violation itself embraces two crimes sufficient to form the basis for the RICO conviction." 695 F.Supp. at 502.[10]

In *dicta*, the Seventh Circuit has rejected the government's approach. *Holzer*, 840 F.2d at 1351. There, the court found that if the defendant (a former judge) accepted bribes from a receiver he had appointed, the defendant was guilty of extortion because he had knowingly received bribes under color of official right. However, "bribery contains an element that extortion does not: that money was offered with the intention of influencing the recipient." *Id. citing* Perkins & Boyce, Criminal Law 533 (3d ed. 1982). Therefore, one who is guilty of extortion may not be guilty of bribery.

> It could be argued, however, that every person who knuckles under to an extortionate demand does so intending to influence the extortionist not to carry out his threat, and that this should be enough to prove bribery. Yet there is some authority that one can be a victim of extortion but not a briber, and that would surely be right in a case where the victim had paid the extortionist at the point of a gun, though the present case is far removed from this, and perhaps in

every case of extortion under color of right the extortionist is also a bribe-taker.

*Id.* at 1351–52 (citations omitted).

In Walgren's case, however, the scenario set forth in *Holzer* is not present. If the jury found Walgren guilty of extortion, it must have found him guilty of bribery as well because the bribes offered to Walgren were clearly offered with the "intent to influence the recipient." Thus, it is as likely as not that when the jury convicted Walgren of violating the Travel Act, it believed or found him guilty of committing an act that was both extortionate and bribery.

The question then arises as to whether a single act that encompasses two criminal offenses can be the basis of a pattern of racketeering. This Circuit has not yet spoken on this question.[11] In *United States v. Kragness*, 830 F.2d 842 (8th Cir.1987), the Eighth Circuit rejected this argument:

> We agree with the defendants that it is not proper under RICO to charge two predicate acts where one action violates two statutes. A pattern of racketeering activity requires "at least two *acts* of racketeering," 18 U.S.C. § 1961(5) (emphasis added), not "at least two statutory offenses." We do not think that the factor of " '*continuity plus relationship*' " *Sedima*, 473 U.S. at 496 n. 14 [105 S.Ct. at 3285 n. 14], ... quoting S.Rep. No. 91–617, 91st Cong., 1st Sess. 158 (1969) (emphasis added), which Congress thought necessary to establish a pattern, can be present where only a single act, albeit an act that violates two statutes, has been committed.

*Id.* at 861 (footnotes and citations omitted). In *Kragness*, the two predicate acts

---

**10.** The district court did not reach this issue because it did not vacate the mail fraud conviction.

**11.** In *H.J., Inc. v. Northwestern Bell Tel. Co.,* —— U.S. ——, 109 S.Ct. 2893, 2899, 106 L.Ed.2d 195 (1989), the Court appeared to assume that at least two predicate acts were necessary to constitute a pattern. In *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1469 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988), the court addressed the issue of whether

the underlying illegal acts must be part of different criminal episodes in order to satisfy the "continuity plus relationship" of *Sedima, S.P. R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). The court concluded that a single criminal episode could constitute a "pattern" as long as there were multiple illegal acts. *See also, Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393 (9th Cir.1986) (plaintiffs failed to state a RICO claim by alleging acts of mail and wire fraud relating to the diversion of a single shipment of products).

charged in the indictment were in fact a single act (importing and possessing marijuana with the intent to distribute).[12]

In contrast, the Eleventh Circuit's standard is "whether each act constitutes 'a separate violation of the [state or federal] statute' governing the conduct in question. If distinct statutory violations are found, the predicate acts will be considered to be distinct irrespective of the circumstances under which they arose." *United States v. Watchmaker*, 761 F.2d 1459, 1475 (11th Cir.1985) (citations omitted). In *Watchmaker*, because the defendant perpetrated three separate violations of the attempted murder statute when he shot three officers almost at the same instant, the court found that he committed three predicate acts sufficient to constitute a violation of the RICO statute. *See also, United States v. Licavoli*, 725 F.2d 1040, 1046 (6th Cir.1984) (conspiracy to commit murder and murder itself constitute two acts of racketeering).

We find the reasoning in *Kragness* to be more persuasive in the context of the present case. Unlike the defendant in *Watchmaker*, Walgren did not commit two separate acts. Instead, like the defendant in *Kragness*, he committed a single act (a telephone conversation) that coincidentally violated both a state and federal law. Walgren's RICO conviction cannot be based solely upon this single act, even though that act may have violated two separate laws.

The government's second argument is that by convicting Walgren of mail fraud (Count XXIV), the jury necessarily found that he had committed a state *bribery* offense. Thus, even if the mail fraud count is vulnerable to attack under *McNally*, the record still establishes the requisite number of acts of racketeering (the bribery under the Travel Act conviction and the bribery under the mail fraud conviction).

■ The government's argument suffers from two flaws. One, the mail fraud indictment charges Walgren with executing a scheme to defraud by mailing a public dis-

closure form that violates state *reporting* requirements, rather than state bribery laws. Therefore, this underlying act is not a "racketeering activity" as defined by 18 U.S.C. § 1961(1), and cannot provide the necessary second predicate act to sustain the RICO conviction.

■ Second, even if the failure to report the contribution could be characterized as a violation of state bribery laws, the indictment did not charge Walgren with such an offense, either as a substantive count or a predicate racketeering act. His RICO conviction cannot be based upon a predicate act that was not charged in the indictment; therefore, it too must be vacated.

## II. NEW TRIAL

In general, this court reviews the denial of a motion for a new trial for an abuse of discretion. *United States v. Lopez*, 803 F.2d 969, 977 (9th Cir.1986). The district court's determination that it lacked jurisdiction to hear the motion, however, should be reviewed *de novo* as an issue of law. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.1984) (*en banc*).

### A. *Jurisdiction to Hear Motion*

■ A motion for a new trial based on the ground of newly discovered evidence "may be made only before or within two years after final judgment." F.R.Crim.P. 33. "Because Rule 33's time limitations are jurisdictional, a district court is powerless to consider an untimely motion for a new trial." *United States v. Cook*, 705 F.2d 350, 351 (9th Cir.1983).

The government concedes that Walgren filed his motion for a new trial within the two-year time limit. The district court, however, decided that its jurisdiction had lapsed because of the delay between the filing of the motion and when the motion was finally heard.

Neither side has cited any case law directly on point. The government analogizes to the time limit set forth in (former) F.R.Crim.P. 35(b), motion to reduce a sen-

---

**12.** The court held that error to be harmless, however, because the jury also found the defen-

dant guilty of a different predicate act. *Id.*

tence. Rule 35(b) was amended in 1985 expressly to provide that "The court shall determine the motion within a reasonable time." The Notes of Advisory Committee on Rules to the 1985 amendment explain the meaning of the amendment:

As for the "reasonable time" limitation, reasonableness in this context "must be evaluated in light of the policies supporting the time limitations and the reasons for the delay in each case." *United States v. Smith, supra* [650 F.2d 206 (9th Cir.1981)] at 209. The time runs "at least so long as the judge reasonably needs time to consider and act upon the motion." *United States v. Stollings, supra* [516 F.2d 1287 (4th Cir. 1975)] at 1288.

Even assuming that the same kind of "reasonable time" limitation applies under Rule 33, it was unreasonable for the trial court to grant the defendant an open-ended extension "until further order of the court," only arbitrarily to impose an unstated earlier deadline after the fact. Nothing suggests that Walgren did not pursue his FOIA requests diligently; he did not know until July 1987 that he would receive no additional documents from the government. Nothing in the record indicates that determination of the motion took more time than either the magistrate or the judge reasonably needed. Moreover, the Advisory Committee Notes state that another purpose of the 1985 amendment was to "remove any doubt" arising from *dicta* in some cases that determination of the motion within any given period was jurisdictional. The time consumed in determination of the motion is not jurisdictional.

Here, given the court's open-ended extension, the delay was not unreasonable and does not undermine the district court's jurisdiction. The district court erred when it dismissed the motion for lack of jurisdiction.

### B. *Whether a New Trial is Proper*

Although the district court decided that its jurisdiction over the motion for a new trial had lapsed, it briefly addressed the merits of the motion:

Additionally, the Court agrees with the Government that the defendant has woe-

fully failed to carry his burden of proving the four factors necessary for a new trial as his "new evidence" appears merely to be a series of assertions about the evidence adduced at trial. He had shown neither that the "evidence" was newly discovered, material, would likely produce an acquittal, nor that his failure to learn of it earlier was due to no lack of diligence on his part.

695 F.Supp. at 503. We conclude from this statement that the district court did not apply the correct legal standard to all of the issues involved in the determination of the motion.

Walgren based his motion for a new trial on three grounds: 1) the government made knowing use of perjured testimony; 2) the government failed to disclose evidence favorable to him in response to his discovery requests; and 3) even if the government did not act improperly, the newly-discovered evidence entitles him to a new trial. The defendant carries a different burden in order to establish each of these bases for a new trial. Here, however, the district court applied the same standard to all three claims.

 Walgren's first basis for a new trial should have been decided under the following standard: If the prosecutor knew or should have known that his case contained perjured testimony, then the conviction "must be set aside if there is *any reasonable likelihood* that this evidence could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976) (emphasis added). In *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1984), the court restated this test as "a materiality standard under which the fact that testimony is perjured is considered material unless failure to disclose it would be harmless beyond a reasonable doubt." *Id.* at 680, 105 S.Ct. at 3382.

 Walgren's second basis for a new trial should have been decided under the following standard: When the prosecutor fails to disclose evidence favorable to the accused, "The evidence is material only if there is a reasonable probability that, had

the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 682, 105 S.Ct. at 3383. The trial court should assess the possibility of an adverse effect that the prosecutor's failure to respond may have on the defendant's case "in light of the totality of the circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's incomplete response." *Id.* at 683, 105 S.Ct. at 3384.

 If Walgren fails to demonstrate governmental misconduct under the standards described above, his showing must then satisfy the four-part test on which the district court relied: 1) the evidence is newly discovered and was unknown to the defendant at the time of trial; 2) the evidence is material, not merely cumulative or impeaching; 3) the evidence will probably produce an acquittal; and 4) failure to learn of the evidence sooner was not due to lack of diligence. *United States v. Kenny,* 645 F.2d 1323, 1343 (9th Cir.), *cert. denied,* 452 U.S. 920, 101 S.Ct. 3059, 69 L.Ed.2d 425 (1981).

The district court erred in applying the incorrect legal standard to the first two bases of Walgren's motion when it concluded that, on the entire motion, Walgren "failed to carry his burden of proving the *four factors* necessary for a new trial...." 695 F.Supp. at 503 (emphasis added). As we have seen this standard, the third standard described above, does not apply when the motion implicates governmental misconduct.

It is the district court which should determine in the first instance whether or not Walgren's new evidence is material under the more lenient *Agurs* standard. On remand, the district court should review the evidence with respect to asserted governmental misconduct in light of the materiality test set forth in *Agurs* and *Bagley*. With respect to the third basis for Walgren's motion for a new trial, we conclude that the district court did not abuse its discretion in finding that the evidence

presented by Walgren on the motion was not "material."

## CONCLUSION

The writ of error coram nobis should be granted with respect to the mail fraud count and the RICO count and the conviction on those counts vacated. On the Travel Act count, the district court should reexamine the first two bases of Walgren's motion for a new trial under the correct legal standard.

The judgment of the district court is AFFIRMED in part, REVERSED in part and REMANDED for further proceedings consistent with this Opinion.