UNITED STATES of America, Plaintiff,

v.

Barry Neil GOLDBERG, Matthew Edwin Lothian, Lester Charles Thompson, Mark Stephen Ott, Defendants.

Matthew Edwin LOTHIAN, Petitioner,

v.

UNITED STATES DISTRICT COURT FOR the CENTRAL DISTRICT OF CALIFORNIA, Respondent.

United States of America, Real Party in Interest.

No. CR 89-960-AAH.

United States District Court, C.D. California.

Oct. 22, 1991.

Mark D. Larsen, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff the U.S.

Thomas E. Holliday and Chad S. Hummel, Gibson, Dunn & Crutcher, Los Angeles, Cal., for defendant/petitioner Matthew E. Lothian.

## DECISION DENYING DEFENDANT LOTHIAN'S PETITION FOR WRIT OF ERROR CORAM NOBIS

HAUK, Senior District Judge.

This matter came on for hearing before the Court on October 16, 1991 on Defendant Lothian's Petition For Writ Of Error *Coram Nobis.* The Court has considered the Petition and the supporting papers, the government's response thereto, together with all the files and records herein, including materials filed *under seal* by the government, and arguments asserted by the parties at the hearing. The Court now makes the following Decision.

## I. INTRODUCTION

Petitioner Lothian and co-defendants Barry N. Goldberg, Lester Charles Thompson, and Mark Stephen Ott operated Barry N. Goldberg & Associates [hereinafter BNGA], a "boiler room" telemarketing operation that sold precious metal contracts to the public for investment purposes. On August 10, 1990, after a three week jury trial, defendant Lothian was found guilty of violating 18 U.S.C. § 1341 (Mail Fraud), (Counts 1–7, 10 and 11), 18 U.S.C. § 1343 (Wire Fraud), (Counts 13 and 15–20), 18 U.S.C. § 2314 (Interstate Transportation of Property Obtained by Fraud), (Counts 23, 24, 26 and 27), and 26 U.S.C. § 7203 (Failure to File an Income Tax Return), (Count 34).

On October 22, 1990, this Court committed Lothian on Count One to the custody of the Attorney General for a period of one year and one day and ordered that Lothian become eligible for parole pursuant to 18 U.S.C. § 4205(a) after serving one-third of the sentence. The Court suspended the imposition of the sentence on each of the remaining counts, and ordered the defendant to be placed on probation for a period of five years, said period of probation to be served concurrently on each count and consecutively to the sentence imposed on Count One. In addition, the Court ordered defendant Lothian to pay restitution to the various victims of the telemarketing scheme.

Lothian began serving his sentence on November 16, 1990 in federal prison and was released to a half-way house on June 18, 1991. He was released from the half-way house on August 18, 1991 and is currently on probation.

Lothian appealed his conviction on all counts except the count for failure to file an income tax return. At trial the government introduced evidence pursuant to Federal Rule of Evidence 404(b) that defendants Goldberg and Thompson had been involved with Schoolhouse Coins, a boiler room operation similar to the scheme prosecuted by the government in this case. The government introduced this evidence through the testimony of Wayne Lynn Pederson, [hereinafter Pederson], a participant in the School House Coins scheme. Lothian's appeal contends, in part, that the Court erred in admitting evidence of Goldberg and Thompson's involvement in the School House Coins fraud through Pederson's testimony. This appeal is currently pending.

## II. DISCUSSION

### A. *Coram Nobis*

 Lothian attacks his conviction pursuant to a Petition for Writ of Error *Coram Nobis*. Habeas Corpus relief pursuant to 28 U.S.C. § 2255 is not available to Lothian because he has served his sentence and is no longer in custody. Although Rule 60(b) of the Federal Rules of Civil Procedure abolishes *Coram Nobis* as a means of obtaining relief from civil judgements, the Supreme Court decided in *United States v. Morgan*, 346 U.S. 502, 506, 74 S.Ct. 247, 250, 98 L.Ed. 248 (1954) that the All Writs Act, 28 U.S.C. § 1651(a), authorizes district courts to issue the Writ of Error *Coram Nobis* in criminal cases to vacate a defendant's conviction when the defendant is no longer in custody. *Coram Nobis* provides a remedy for defendants suffering from "lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact." *Yasui v. United States*, 772 F.2d 1496, 1498 (9th Cir.1985).

### B. *Grounds For Writ Of Error Coram Nobis*

The basis for defendant's *Coram Nobis* Petition is that Wayne Pederson committed perjury at trial. As stated above, Pederson testified for the government at trial regarding Lothian's co-defendants' involvement in a boiler room operation that was allegedly similar to BNGA. Defense counsel asked Pederson on cross-examination whether he had ever used an alias. (Reporter's Transcript, Friday, July 20, 1990 at 373). [hereinafter "Trans."] Pederson admitted that he had used an alias in the past. Pederson stated, however, that he never used more than one alias. *Id.* On re-direct examination, the prosecutor asked Pederson to explain his prior use of an alias. (Trans. at 399). Pederson replied that in the past year he had spoken before a state subcommittee in Sacramento and to the United States Congress regarding boiler room activities and used an alias on those occasions for security purposes. (Trans. at 400). Pederson stated that those were the only times he had ever used an alias. *Id.*

Defendant asserts that this testimony was false because Pederson employed several other aliases in the past, to wit:

1. According to a July 15, 1991 letter from Assistant United States Attorney David Sklansky to counsel for all the defendants, Pederson applied for credit under the name "Lynn Dieltz" in the fall of 1987;

2. Pederson's rap sheet indicates that he was arrested and charged several times under the name "P–E–D–E–R–S–E–N;"

3. Pederson's name was spelled "P–E–T–E–R–S–O–N" on a credit application to the Bank of Beverly Hills, apparently completed August 7, 1990, while the trial was underway. This credit application included a false social security number and named "Lynn Dieltz" as a "debtor" owing Pederson money;

4. Pederson was indicted and prosecuted under the name "P–E–D–E–R–S–E–N" for the School House Coins scheme in *United States v. Pedersen*, CR 90–288 prior to his testimony in defendant Lothian's trial.

Douglas Miller, an investigator for the Orange County District Attorneys Office, knew prior to Lothian's trial that Pederson used "Lynn Dieltz" as an alias. Miller testified in a recent case, *United States v.*

*Nicholas Sterner,* CR–91–366–JGD, that he became aware Pederson used "Lynn Dieltz" as an alias shortly after he met Pederson in January, 1990. *See United States v. Nicholas Sterner,* CR–91–366–JGD, Reporter's Transcript, Wednesday, July 10, 1991 at 9–10. Consequently, Miller was aware that Pederson used the "Lynn Dieltz" alias prior to Lothian's July 1990 trial. Lothian characterizes Investigator Miller as a "representative for the government" and argues that Miller's knowledge of Pederson's prior use of aliases should be imputed to the government prosecutors in this case. Accordingly, Lothian argues that the government's knowing use of perjured testimony violated his Fourteenth Amendment right to due process and prays that this Court will vacate his conviction.

C. *A District Court Should Only Entertain A Collateral Motion During The Pendency Of A Direct Appeal Where The Defendant Demonstrates "Extraordinary Circumstances" To Warrant Relief From His Conviction*

■ Defendant filed his Notice of Appeal of this Court's Judgement and Order on October 25, 1990. Generally, a pending appeal "severely restricts the filing of a collateral claim with the District Court, to avoid any anomaly associated with the simultaneous consideration of the same case by two courts." *United States v. Taylor,* 648 F.2d 565, 572 (9th Cir.), *cert. denied,* 454 U.S. 866, 102 S.Ct. 329, 70 L.Ed.2d 168 (1981). However, the general rule of forbearance is a rule of administrative convenience and judicial economy and not a jurisdictional bar to asserting such collateral claims. The Ninth Circuit stated in *Taylor* that "[t]he District Court may entertain a collateral motion during the pendency of a direct appeal if 'extraordinary circumstances' outweigh the consideration of administrative convenience and judicial economy." *Taylor,* 648 F.2d at 572, *quoting Jack v. United States,* 435 F.2d 317, 318 (9th Cir.1970) (per curiam), *cert. denied,* 402 U.S. 933, 91 S.Ct. 1530, 28 L.Ed.2d 867 (1971). Hence, Lothian's direct appeal is not an absolute bar to his concurrent *Coram Nobis* Petition. However, the Ninth Circuit stated in *Taylor* that the pendency of a direct appeal "imposes the burden on [the defendant] of proving the existence of circumstances sufficiently extraordinary to warrant dual proceedings." *Taylor,* 648 F.2d at 572. In *Taylor,* the Ninth Circuit decided that extraordinary circumstances existed to warrant hearing a collateral claim during the pendency of a direct appeal because defendant's *Coram Nobis* motion cast "such a dark shadow on a pivotal aspect of a direct appeal and at the same time, implicate[d] the fundamental fairness of the trial . . ." *Id.*

■ This Court turns to the facts of *Taylor* for instruction on whether Lothian has met his burden of proving "extraordinary circumstances" to warrant this Court's entertaining his Petition. In *Taylor* the defendant was charged with wire fraud. A critical issue to the jurisdictional element of the case was whether the defendant affixed his signature to a letter before it was telecopied from California to Texas. The government claimed to have unsuccessfully subpoenaed the original letter and telecopy of the original letter. The district court allowed the government to introduce a photocopy of the telecopied letter into evidence because the government could not obtain the original.

The defendant appealed his conviction to the Ninth Circuit on the grounds that the district court's admission of the photocopy violated the best evidence rule. The Ninth Circuit affirmed the district court's decision to admit the photocopy pursuant to Rule 1004(2) of the Federal Rules of Evidence, which provides that secondary evidence may be admitted when the "original cannot be obtained by judicial procedures." *Id.* at 570.

During the pendency of the direct appeal, Taylor filed a motion for Writ of Error *Coram Nobis* charging that the government never issued subpoenas to get the original letter and hence had argued for the admissibility of the photocopy in bad faith. The district court summarily denied the motion without a hearing because Tay-

lor's direct appeal was pending in the higher court. Taylor appealed the district court's denial of his motion to the Ninth Circuit. The *Taylor* Court determined that extraordinary circumstances existed to permit the defendant to assert his collateral attack during the pendency of his direct appeal. Accordingly, the Ninth Circuit remanded Taylor's *Coram Nobis* motion to the district court for further hearings.

The *Taylor* Court based its finding of "extraordinary circumstances" on the close relationship between defendant's *Coram Nobis* motion and his direct appeal. The Court stated:

> "We affirmed the conviction largely because of our decision to uphold the admission of [evidence]. That decision, in turn, was based upon the government's unsubstantiated, albeit un-rebutted, declaration at trial that the subpoena power had failed to produce the original document. Therefore, Taylor's collateral claim—challenging the truth of the Government's representations—raises a disquieting question which threatens *the very basis of our affirmance of Taylor's conviction.*"

*Id.* at 572. (emphasis added).

Hence, Taylor's *Coram Nobis* motion alleged newly discovered facts which were directly related to the issue framed in his direct appeal. In contrast, Lothian's appeal asserts that the admission of evidence of defendants Goldberg and Thompson's prior bad acts pursuant to Federal Rule of Evidence 404(b) was improper. Lothian's purported inability to impeach Pederson has no bearing on the admissibility of the 404(b) evidence. The Ninth Circuit will decide Lothian's appeal by analyzing whether there was sufficient evidence that the uncharged conduct took place, whether the other acts are close in time and similar to the charged conduct and whether the Rule 404(b) evidence was introduced to prove a material element of the case. Hence, unlike *Taylor*, the substance of defendant Lothian's *Coram Nobis* Petition—that Wayne Pederson lied about his prior use of aliases at trial—does not bear on the issue framed in defendant's direct appeal.

Lothian has not presented "extraordinary circumstances" that *require* this Court to entertain his *Coram Nobis* Petition during the pendency of his direct appeal. Nevertheless, the Court has considered the substantive grounds asserted in defendant's Petition and the Government's substantive response thereto and has decided that even if this collateral attack were procedurally proper, defendant is not entitled to relief.

## D. Defendant Has Not Alleged Error Of The Most Fundamental Character

■ The common law Writ of Error *Coram Nobis* "allows a court to vacate its judgements 'for errors of fact ... in those cases where the errors [are] of the most *fundamental* character, that is, such as rendered the proceeding itself invalid.'" *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir.1987), *quoting United States v. Mayer*, 235 U.S. 55, 69, 35 S.Ct. 16, 19–20, 59 L.Ed. 129 (1914). (emphasis added). *Coram Nobis*, however, is not a catchall mechanism that allows defendants to re-litigate issues minimally important to the jury's decision. "Continuation of litigation after final judgement and exhaustion or waiver of any statutory right should be allowed through this extraordinary remedy only under circumstances compelling such action to achieve justice." *United States v. Morgan*, 346 U.S. 502, 511, 74 S.Ct. 247, 252, 98 L.Ed. 248 (1954) (hearing on petition for Writ of *Coram Nobis* appropriate when accused alleged he was without counsel, had not been advised of his right to counsel, and pled guilty).

■ Lothian must demonstrate the following four elements to obtain *Coram Nobis* relief:

(1) a more usual remedy is not available;

(2) valid reasons exist for not attacking the conviction earlier;

(3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; *and*

(4) the error is of the most fundamental character.

*Hirabayashi,* 828 F.2d at 604; *United States v. Walgren,* 885 F.2d 1417, 1420 (9th Cir.1989).

As the government concedes, defendant's Petition clearly satisfies the second and third elements of the test annunciated in *Hirabayashi.* The defendant learned of Pederson's apparent perjury on July 15, 1991 when Assistant United States Attorney Sklansky informed defense counsel that Pederson used the alias "Lynn Dieltz" in a 1987 credit application. Hence, Lothian could not have attacked his conviction on these grounds earlier. Further, although defendant has already been released from prison, the Court placed him on probation for a period of five years on the condition that, *inter alia,* he not participate in any telemarketing activity or work as a stock broker. The Court also ordered defendant to make restitution to various victims of the boiler room scheme. Hence, there are sufficient adverse consequences from Lothian's conviction to satisfy the case or controversy requirement of Article III. *See Hirabayashi,* 828 F.2d at 606–607 (stating that any judgement of misconduct has consequences for which one may be legally or professionally accountable).

■ Lothian, however, has not demonstrated that his Petition satisfies the first and the fourth requirements for issuance of the writ. With respect to the first element, Lothian's pending appeal provides the most efficient remedy. Defendant contends that there is no trial record showing that Pederson lied about his prior use of aliases or that Investigator Miller knew about such use at the time of trial. Hence, defendant asserts that he may not raise these issues in an appeal. Nevertheless, even if the Court of Appeals decides not to consider defendant's arguments based on Pederson's perjury, Lothian may still prevail on the appeal. *Coram Nobis* relief would then be unnecessary. Moreover, provided the appeal is decided within two years of final judgement, Lothian may make a motion for a new trial based on newly discovered evidence pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

■ As for the fourth element, Lothian has not shown that Pederson's purported perjury created an error "of the most fundamental character." Neither Pederson's perjurious testimony nor Lothian's purported inability to impeach him constituted a fundamental error of fact. Moreover, Lothian has not demonstrated that the government had actual or constructive knowledge that Pederson committed perjury at trial.

1. *Further Impeachment of Wayne Pederson Would Not Have Assisted the Jury in Reaching a Verdict*

*Coram Nobis* relief is only appropriate where a defendant demonstrates an error that "rendered the proceeding itself invalid." *Hirabayashi,* 828 F.2d at 604. The Ninth Circuit decided the writ was appropriate in *United States v. Walgren,* 885 F.2d 1417, 1420 (9th Cir.1989), where a defendant was convicted of mail fraud based upon acts that deprived the citizens of the State of Washington of their right to good government. After Walgren's conviction, the Supreme Court decided in *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) that the mail fraud statute protects only tangible property rights, not the intangible right of citizens to good government. Accordingly, the Ninth Circuit decided that Walgren was entitled to relief because his "mail fraud conviction rests upon the commission of a fraud that was not a crime." *Walgren,* 885 F.2d at 1424.

In this case, however, Lothian's *Coram Nobis* Petition alleges facts that bear on the veracity of a witness for the government. The record demonstrates, however, that Lothian's conviction did not turn on Pederson's testimony or the jury's belief in Pederson's veracity. Pederson's testimony was primarily directed at Lothian's co-defendant Lester Thompson. In fact, Pederson never mentioned Lothian's name during the course of his testimony. Pederson's testimony prejudiced Lothian to some extent only because the government argued to the jury that the defendants acted as agents for one another in the scheme. Significantly, defense counsel for Lothian opted not to cross-examine Pederson.

a. *The government introduced over-whelming evidence of Lothian's guilt.*

The government called 35 witnesses other than Pederson in its case in chief, many of whom placed Lothian at the heart of the scheme. Lothian's co-defendant, Barry N. Goldberg pled guilty and testified against Lothian and the other defendants. Other salesmen at BNGA testified that Lothian overheard and sometimes supervised phone calls whereby they fraudulently induced members of the public into buying worthless coins. Further, defrauded investors testified that they spoke to a "Matt Logan" who sent them fraudulent brochures. Telephone operators at BNGA testified that they put calls for Matt Logan through to Matt Lothian. Hence, Pederson's testimony was by no means critical to Lothian's conviction.

b. *Pederson was impeached extensively and additional impeachment based upon his use of aliases would have been useless.*

Defense counsel thoroughly impeached Pederson on his involvement in the School House Coins scheme, his motivation for testifying at the Goldberg trial and his past criminal history. Pederson admitted on cross-examination that he pled guilty to four counts of mail fraud for his involvement in the School House Coins scheme. Pederson revealed that as a sales manager at School House Coins he committed hundreds of acts of fraud and ripped off millions of dollars from the public. In addition, Pederson testified that he faced a maximum sentence of twenty years for his involvement in School House Coins. Pederson stated that he hoped that by cooperating with the government and testifying against defendants Thompson and Goldberg, he would receive a lighter sentence for his crimes. Moreover, Pederson confessed to taking part in other telemarketing schemes whereby over $75 million was stolen from members of the public. Finally, Pederson admitted that he had prior convictions for embezzlement, and conspiracy to commit robbery, burglary and forgery. Hence, defense counsel effective-ly and thoroughly impeached Pederson's credibility.

c. *The government argued to the jury that Pederson should not be believed absent corroboration.*

The government prosecutor referred to Pederson in his closing arguments as a "career criminal," "a crook running a crooked operation," and stated that Pederson had a "poor reputation for honesty." (Reporters Transcript of Proceedings, 8/3/90 at 1662). Moreover, the government argued to the jury that Pederson was not an honest man and should not be believed on the basis of his honesty. Instead, the prosecutor asked the jury to believe Pederson because his testimony had been corroborated. (*Id.* at 19).

Therefore, it is difficult to escape the conclusion that further impeachment of Pederson based on his prior use of aliases would have had little effect on the jury's already diminished regard for Pederson's veracity.

2. *The Government Did Not Have Constructive Knowledge Of Pederson's Perjury*

Lothian asserts he was prejudiced, in part, because he was unaware at the time of trial that Wayne Lynn Pederson employed variations of the spelling of his last name. This argument is without merit. It is clear from the record that the government gave defendants a copy of Pederson's rap sheet containing variations of his name before trial pursuant to this Court's pre-trial discovery order. (Trans. at 349). Moreover, Pederson actually gave a different variation of his name each time he testified in this case. When Pederson testified on July 20, 1990, he stated his name was spelled P–E–D–E–R–S–O–N. (Trans. at 347). However, when Pederson returned to testify on August 1, 1990, he gave the spelling of his name as P–E–D–E–R–S–E–N. (Reporter's Transcript, Wednesday, August 1, 1990 at 9). Hence, defense counsel had the opportunity to cross-examine Pederson about the various spellings of his name and inquire further how that related to his testimony about his

aliases. It is probable defense counsel overlooked or ignored this matter because, as discussed above, they successfully impeached Pederson on numerous other grounds. In any event, Pederson's use of variations on the spelling of his name does not support Lothian's Petition for Writ of Error *Coram Nobis.*

■ Moreover, Lothian's argument that the government had constructive knowledge of Pederson's prior use of the "Lynn Dieltz" alias is based on his dubious contention that Investigator Miller's knowledge of this fact should be imputed to the federal prosecutors. It is clear, however, that a state official's knowledge is properly imputed to federal authorities only when state and federal law enforcement officials extensively cooperate with each other in an investigation. *United States v. Antone,* 603 F.2d 566, 570 (5th Cir.1979) (knowledge by Florida Prosecutors that testimony in a federal trial was false imputed to federal authorities when there was "extensive cooperation between the investigative agencies" and "the state investigators functioned as agents of the federal government under the principals of agency law utilized in *Giglio*."); *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972) (where an Assistant United States Attorney promised a defendant immunity, knowledge of this promise was imputed to the Assistant United States Attorney who later tried the case).

It is apparent in this case, however, that interaction between state and federal agencies was minimal. According to the unrebutted declarations of federal prosecutors, made under penalty of perjury, the entire investigation and trial was conducted by federal law enforcement agencies without significant assistance from state or local law enforcement officials. Federal prosecutors declare further that they turned over all discoverable information in the government's possession relating to Wayne Pederson to defense counsel prior to trial. The prosecutors state that at the time of trial they had no knowledge that

Pederson used more than one alias or used an alias on more than one occasion, nor did they have any reason to believe that his testimony was false.

In addition, Investigator Miller declares, under penalty of perjury, that his involvement in this case was limited to serving a subpoena on Pederson, requiring Pederson to testify in a case described to Miller only as the "Goldberg Case." Moreover, Miller states he is unaware of any cooperative efforts between the Orange County District Attorneys Office and the federal government other than the location of a witness and service of the Pederson subpoena.

Although the Court gives considerable weight to these unrebutted declarations, its decision does not rest solely thereon. In the interest of justice and to promote confidence in the federal criminal justice system, the Court ordered the government to file, under seal, any and all information it had at the time of Lothian's trial concerning Wayne Pederson. The government complied with this order by filing Pederson's pseudonymous letter to Congress, his rap sheet, and the transcript of his interview with postal inspectors. The Court has examined these materials *in camera,* along with a copy of Pederson's plea agreement in the case of *United States v. Wayne Lynn Pedersen,* CR–90–288, that the government provided to the Court at the hearing, and has found that they contain no information bearing on Pederson's prior use of aliases.[1] Hence the Court concludes that Investigator Miller's knowledge of Pederson's prior use of aliases can not be imputed to federal prosecutors. The Court finds further that federal prosecutors had no actual knowledge at the time of trial that Pederson committed perjury by testifying he used only one alias.

The government did not obtain the case file in *United States v. Wayne Lynn Pedersen,* CR–90–288 from its archives in time for the hearing on this matter. The government represents, however, that there is nothing in this file regarding Ped-

1. The Court has determined, and the government agrees, that these materials contain no information requiring them to remain under seal. Hence, the Court ordered the materials to be unsealed and made part of the record.

erson's prior use of aliases. Nevertheless, the Court has ordered the government to produce this file forthwith and turn it over to the defendant. Should defendant find information in this file bearing on the government's knowledge of Pederson's former use of aliases, which in light of this Decision might change the Court's view, defendant should move for a supplemental hearing of this Petition.

The Court notes, however, without deciding, that it is questionable whether defendant would be entitled to relief even if the government knew of Pederson's prior use of aliases. The Ninth Circuit set forth the standard for a new trial under the circumstances alleged by the Petitioner herein in *United States v. Endicott*, 869 F.2d 452 (9th Cir.1989). The Court stated:

> "If the prosecution knowingly uses perjured testimony, or if the prosecution knowingly fails to disclose that testimony used to convict a defendant was false, the conviction must be set aside if there is any reasonable likelihood that the false testimony could have affected the jury verdict."

*Id.* at 455.

Although the Court has found that the government had no knowledge, constructive or otherwise, that Pederson committed perjury, it is not clear in view of the overwhelming evidence of Lothian's guilt and the extensive impeachment of Pederson, that there is any reasonable likelihood that Pederson's false testimony could have affected the jury's verdict in any way.

### III. CONCLUSION

Defendant's Petition for Writ of Error *Coram Nobis* does not present extraordinary circumstances to warrant its assertion in this Court during the pendency of his direct appeal. However, because the government responded to defendant's substantive allegations, the Court has considered the merits of defendant's Petition and finds that the defendant has not demonstrated an error of the most fundamental character. Hence, defendant's Petition for Writ of Error *Coram Nobis* is denied, with

prejudice. Let an ORDER be entered accordingly.